IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GERDA ZINNER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-cv-00535 |
| | ) | |
| STATE OF TENNESSEE, ET AL. | ) | Judge Aleta A. Trauger |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORDANDUM IN SUPPORT OF
STATE DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT..............................................................................................................................1

    I.       Zinner lacks standing to assert any claims against UT or President Boyd............................1

    II.      VanNess lacks standing to assert a § 1983 Equal Protection claim against the State Defendants as any such claim is moot and barred by sovereign immunity...................................................................................................................2

    III.     Plaintiffs fail to state a plausible § 1983 claim under the Equal Protection Clause.............3

         A.    The Plans provide equal coverage to both sexes ...............................................3

         B.    Transgender individuals do not constitute a suspect class under the Equal Protection Clause ...........................................................................................5

         C.    The Exclusion satisfies judicial scrutiny. ...............................................................6

    IV.     Plaintiffs fail to state a plausible claim under Title VII.............................................................7

         A.    Zinner's Title VII claims are time-barred ...........................................................7

         B.    Plaintiffs fail to establish a Title VII claim on the merits ...............................8

    V.      Zinner fails to establish a plausible claim under Title IX .......................................................9

         A.    Zinner's Title IX claim is time-barred ..................................................................9

         B.    Zinner fails to establish a Title IX claim on the merits..................................10

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Almond v. Unified Sch. Dist. No. 501*,
  665 F.3d 1174 (10th Cir. 2011) ...................................................................................8

*Am. C.L. Union v. The Fla. Bar*,
  999 F.2d 1486 (11th Cir. 1993) ...................................................................................1

*Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*,
  463 U.S. 1073 (1983)...................................................................................................1

*Armour v. City of Indianapolis, Ind.*,
  566 U.S. 673 (2012)....................................................................................................7

*Bostock v. Clayton County, Georgia*,
  140 S.Ct. 1731 (2020).......................................................................................8, 9, 10

*Bowen v. Gilliard*,
  483 U.S. 587 (1987)....................................................................................................6

*Boyden v. Conlin*,
  2018 WL 2191733 (W.D. Wis. May 11, 2018) ..........................................................1

*Bristol Reg'l Women's Ctr., P.C. v. Slatery*,
  7 F.4th 478 (6th Cir. 2021).................................................................................... 6, 7

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)....................................................................................................7

*Craig v. Boren*,
  429 U.S. 190 (1976)....................................................................................................4

*D.H. v. Williamson Cty.*,
  638 F.3d 821 (M.D. Tenn. Nov. 2, 2022) ............................................................... 10

*Del. State Coll. v. Ricks*,
  449 U.S. 250 (1980)....................................................................................................8

*Diamond v. Charles*,
  476 U.S. 54 (1986).......................................................................................................1

*Dobbs v. Jackson Women's Health Organization*,
  142 S.Ct. 2228 (2022)...............................................................................3, 4, 5, 9

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ................................................................................................9

*Eknes-Tucker v. Alabama*,
    2023 WL 5344981 (11th Cir. 2023) ......................................................................................9

*Geduldig v. Aiello*,
    417 U.S. 484 (1974) ............................................................................................. 3, 4, 5, 8, 9

*Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*,
    353 F. Supp. 3d 724 (M.D. Tenn. 2018) .............................................................................10

*Hebron v. Shelby Cnty. Govt.*,
    406 Fed. Appx. 28 (6th Cir. 2010) ........................................................................................8

*International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, et al., Petitioners v. Johnson Controls, Inc.*
    499 U.S. 187 (1991) ..............................................................................................................9

*J.E.B. v. Alabama ex rel. T.B.*,
    511 U.S. 127 (1994) ..............................................................................................................4

*Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
    502 F. App'x 523 (6th Cir. 2012) .........................................................................................2

*June Medical Servs. v. Russo*,
    140 S.Ct. 2103 (2020) ...........................................................................................................7

*L.w. v. Skrmetti*,
    2023 WL 6321688 (6th Cir. Sept. 29, 2023) ................................................................passim

*LRL Properties v. Portage Metro Hous. Auth.*,
    55 F.3d 1097 (6th Cir. 1995) ..............................................................................................10

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ..............................................................................................10

*Michael M. v. Super. Ct.*,
    450 U.S. 464 (1981) ..............................................................................................................4

*Michigan Interlock, LLC v. Alcohol Detection Sys., LLC*,
    802 F. App'x 993 (6th Cir. 2020) .........................................................................................2

*Miss. Univ. For Women v. Hogan*,
    458 U.S. 718 (1982) ..............................................................................................................4

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577 (6th Cir. 1992) .......................................................................................... 8-9

*N. Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982)............................................................................................................. 10

*Nguyen v. INS*,
    533 U.S. 53 (2001)...............................................................................................................4

*Ondo v. City of Cleveland*,
    795 F.3d 597 (6th Cir. 2015)...............................................................................................6

*Orr v. Orr*,
    440 U.S. 268 (1979).............................................................................................................4

*Parsons v. U.S. Dep't of Just.*,
    801 F.3d 701 (6th Cir. 2015)...............................................................................................1

*Paterek v. Vill. of Armada*,
    801 F.3d 630 (6th Cir. 2015)...............................................................................................3

*Pers. Adm'r v. Feeney*,
    442 U.S. 256 (1979).............................................................................................................4

*Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)........................................................................................................... 10

*Reed v. Reed*
    404 U.S. 71 (1971)...............................................................................................................4

*Sessions v. Morales-Santana*,
    582 U.S. 47 (2017)...............................................................................................................4

*Sharpe v. Cureton*,
    319 F.3d 259 (6th Cir. 2003)...............................................................................................9

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004)...............................................................................................9

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
    641 F.3d 197 (6th Cir. 2011)...............................................................................................2

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................................................2

*Trihealth, Inc. v. Bd. Of Comm'rs, Hamilton Cnty.*,
    430 F.3d 783 (6th Cir. 2005)...............................................................................................6

*Trump v. Hawaii*,
    138 S.Ct. 2392 (2018)..........................................................................................................5

*U.S. v. Virginia,*
518 U.S. 515 (1996)......................................................................................................................4

**Statutes**

42 U.S.C. § 2000e-5(e)(3)(a)........................................................................................................8

Tenn. Code Ann. § 8-27-302........................................................................................................2

## INTRODUCTION

State policymakers have wide discretion in regulating healthcare, including in the allocation of public health benefits. The Plans in which Plaintiffs are or were enrolled evenhandedly provide every participant the *same* health benefits to protect against the *same* health risks. The challenged Exclusion no more constitutes unlawful sex discrimination than do state laws banning sex-change surgeries and cross-sex hormones for children. *See L.W. v. Skrmetti*, 2023 WL 6321688 (6th Cir. Sept. 29, 2023). The Sixth Circuit has rejected nearly all of Plaintiffs' arguments to the contrary. Many of Plaintiffs' claims also have procedural deficiencies. These Defendants should be dismissed as a matter of law.

## ARGUMENT

**I. Zinner lacks standing to assert any claims against UT or President Boyd.**

The traceability threshold of Article III standing requires Zinner to plead facts that support "more than speculative but less than but-for" causation. *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 714 (6th Cir. 2015). Yet Zinner fails to present any facts demonstrating that either UT or President Boyd are "designated to enforce" the State Health Plan or the challenged Exclusion, such that they would be "proper defendants" to whom Zinner's alleged injury can be traced. *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *see also Am. C.L. Union v. The Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993). Zinner concedes that the State Insurance Committee sets the Plan's premiums, benefits package, and other terms, and that a third-party administrator, BCBST, "process[es] pre-authorization requests and claims." Compl. ¶119. Traceability is too attenuated against UT, which simply made Zinner "eligible for group health insurance" through employment but "played no role in selecting, offering or providing that health insurance." *Boyden v. Conlin*, 2018 WL 2191733 at *4 (W.D. Wis. May 11, 2018) (dismissing for lack of standing employees' claims against employers who played no role in administration of state health plan they were challenging). And the only allegation against President Boyd is that he oversees certain officers—none of whom have authority to modify Plan benefits. Compl. ¶34.[1]

---

[1] Zinner's reliance on *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073 (1983), to establish standing against UT and Boyd is misplaced. The defendant in *Norris* was statutorily required to administer the challenged compensation plan, a factual posture more similar to the State Defendants that did not oppose Zinner's standing. *Id.* at 1075 - 1076.

Zinner also fails to explain how the requested relief against UT and President Boyd would be likely to alleviate the alleged harm. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Declaratory or injunctive relief against UT and President Boyd would serve merely as an "advisory opinion" since it would have no ability to "affect[] the behavior of the defendant[s] towards" Zinner. *Michigan Interlock, LLC v. Alcohol Detection Sys., LLC*, 802 F. App'x 993, 999 (6th Cir. 2020) (holding citizen lacked standing to pursue § 1983 claim against state official who lacked authority to redress alleged injury).

Zinner's Supremacy Clause argument also misses the mark. While it is true that federal laws preempt conflicting state laws, Resp. [62] at 24, Zinner must establish standing to bring suit against UT and President Boyd *before* the Court can analyze whether the Plan conflicts with any federal law.

## II. VanNess lacks standing to assert a § 1983 Equal Protection claim against the State Defendants as any such claim is moot and barred by sovereign immunity.

Standing to bring suit must be determined at the time the complaint is filed, *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011), and is predicated on facts raised in the pleadings. *See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541-42 (6th Cir. 2012). The Complaint raises claims on behalf of VanNess only for past harm, given that Van Ness is no longer employed by Knox County or eligible to participate in the Local Education Plan. S*ee* Compl. ¶¶25, 105. And simply applying for a job with Knox County does not subject VanNess to the "imminent and substantial" harm necessary to support the "concrete" injury required by Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 – 2211 (2021). VanNess' pleadings require several levels of speculation to arrive at the possibility of re-enrolling in the Plan.[2]

Additionally, VanNess has presented no facts to support standing to sue the State Insurance Committee. *See* Resp. at 24. The Local Education Plan is governed by the Local Education Insurance Committee, not the State Insurance Committee. Compl. ¶¶ 25, 29; Tenn. Code Ann. § 8-27-302.

---

[2] Plaintiffs' Response asserts that VanNess has been rehired by Knox County and plans to re-enroll in the Program. Resp. at 25. But the Court cannot consider any such new allegation here because, in deciding a motion to dismiss, the Court should consider only "the facts and legal claims as raised in the pleadings." *See Johnson*, 502 F. App'x 523, 541-42 (6th Cir. 2012) (citing Moore's Federal Practice §12.34 ("The court may not … take into account additional facts asserted in a memorandum opposing a motion to dismiss because such memoranda do not constitute pleadings …")). Plaintiffs also mention for the first time in their Response that Zinner plans to leave, or has left, UT. Once Zinner leaves, Zinner's claims for prospective declaratory and injunctive relief would also be moot for the same reason as VanNess's.

**III.    Plaintiffs fail to state a plausible § 1983 claim under the Equal Protection Clause.**

    **A.    The Plans provide equal coverage to both sexes.**

Plaintiffs' most glaring error is their attempt to reframe a classification that turns on the medical condition being treated into a facial classification based on sex. Specifically, Plaintiffs equate the surgeries they seek for treatment of gender dysphoria—a psychological condition—with surgeries used to treat physical injuries and diseases. *See, e.g.,* Resp. at 24. But under equal-protection analysis, "similarly situated" individuals "must be similar in all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015). A female seeking breast "reconstruction" following a mastectomy to treat breast cancer—which is covered under the Plan, *see, e.g.,* Local Ed. Plan at Sec. 13.02(P)(13)—is not "similarly situated" to a male seeking breast "augmentation" for gender dysphoria. Both men and women can receive coverage for the former treatment, but *no one* can receive coverage for the latter.

The Sixth Circuit rejected Plaintiffs' argument in a recent challenge to a law prohibiting minors from receiving drugs and surgeries for sex transformation. *See L.W. v. Skrmetti*, 2023 WL 6321688, at *14 (6th Cir. Sept. 29, 2023). "Using testosterone or estrogen to treat gender dysphoria (to transition from one sex to another) is a different procedure" than using the same drugs to treat a genetic or congenital condition that occurs exclusively in one sex. *Id.* Same goes for surgeries. Distinct uses of certain treatments "stem from different diagnoses and seek different results." *Id.* "Because the underlying condition and overarching goals differ, it follows that the cost-benefit analysis does too," allowing States to adopt solutions without fear of having presumptively violated the Constitution. *Id.*

That the Exclusion implicates sex makes no difference. As the Sixth Circuit noted in *L.W.*, "only females can use testosterone as a transition treatment," and only "males can use estrogen as a transition treatment." *Id.* at *14. In the same way, only males can use a vaginoplasty as a transition treatment, and only females can use a phalloplasty as a transition treatment. Those treatments are "medical procedure[s] that only one sex can undergo," and they do not "trigger heightened constitutional scrutiny." *Id.* (citing *Dobbs*, 142 S.Ct. at 2245-46; *Geduldig*, 417 U.S. at 496 n. 20). If a law restricting a medical procedure that applies only to women does not trigger heightened scrutiny, as in *Dobbs*

3

and *Geduldig*, the Exclusion here doesn't either. *Id.* Plaintiffs argue that *Dobbs* and *Geduldig* are inapplicable in this context. Pltf. Resp. at 15. But the Sixth Circuit disagrees. *Id.*, at *18.

The Exclusion regulates coverage for treatments related to sex-transition treatments "for all [Plan members], regardless of sex." *L.W.*, 2023 WL 6321688, at *13. "Such an across-the-board regulation lacks any of the hallmarks of sex discrimination." *Id.* The Exclusion "does not prefer one sex over the other." *Id.* (citing *Reed*, 404 U.S. at 73, 76). It also "does not include one sex and exclude the other." *Id.* (citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 729 (1982); *Virginia*, 518 U.S. at 519-20; *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140 (1994). The Exclusion "does not bestow benefits or burdens based on sex." *Id.* (citing *Michael M. v. Super. Ct.*, 450 U.S. 464, 466 (1981) (plurality op.); *Orr v. Orr*, 440 U.S. 268, 271 (1979)). And it "does not apply one rule for males and another for females." *Id.* (citing *Sessions v. Morales-Santana*, 582 U.S. 47, 58 (2017); *Craig v. Boren*, 429 U.S. 190, 192 (1976)). The Exclusion treats men and women "exactly the same" for constitutional purposes. *Id.*

Plaintiffs' argument that the Exclusion "burdens" both men and women, Resp. at 13-14, is misplaced. When State action on its face "treat[s] both sex equally," as the Exclusion does, a challenger must show that the State adopted the regulation "because of, not in spite of, any alleged unequal treatment." *L.W.*, 2023 WL 6321688, at *15 (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 274 (1979)). "Mechanistic classification of all gender differences as stereotypes," as Plaintiff urges here, "would operate to obscure those misconceptions and prejudices that are real." *Nguyen v. INS*, 533 U.S. 53, 73 (2001). The Exclusion's mere nod to the "enduring" differences between men and women does not trigger heightened review. *L.W.*, 2023 WL 6321688, at *16 (citing *Virginia*, 518 U.S. at 533).

There also is no factual or legal basis for Plaintiffs' assertion that the Exclusion discriminates based on transgender status. Plaintiffs assert that only transgender people seek surgical sex transformation. But they concede that not all transgender individuals experience gender dysphoria, and not all seek surgery for sex transformation. Compl. ¶¶43, 50-51. Because transgender individuals are in "both" the group of individuals who seek surgical treatment for gender dysphoria *and* in the group that don't, the "fiscal and actuarial benefits of the [Plan] thus accrue to" both those who identify as transgender and those who do not. *Geduldig*, 417 U.S. at 496 n.20. Thus, there is a "lack of identity"

4

between transgender status and the excluded treatments. *Id.* Just as the Supreme Court found no sex classification in *Geduldig* where every plan member seeking pregnancy benefits was female, there is no classification based on transgender status here, either.

Plaintiffs' only retort is that the Plan does not provide all Plan members "the same benefit" because it "bars coverage of surgical procedures like vaginoplasty for transgender people but leaves them covered for cisgender people." Resp. at 18. That ignores that the procedures are offered to treat different conditions. *See L.W.*, 2023 WL 6321688, at *14 ("States may permit varying treatments of distinct diagnoses"). Vaginoplasty is available to all Plan members as a treatment for the *same* covered medical diagnoses. So, too, for other surgeries covered under the Plans. *See, e.g.,* Local Ed. Plan at Sec. 13.02(P)(13) (breast reconstruction following mastectomy). But the Plans do not cover surgery for *any* psychological condition, including gender dysphoria. That distinction does not single out transgender individuals for lesser treatment, nor does it create a proxy for the same.

Plaintiffs also fail to present facts showing that the Exclusion constitutes "invidious discrimination" toward transgender individuals. Resp. at 15-16. The "consensus of major medical organizations" has no bearing on the meaning of the Constitution. *Dobbs*, 142 S.Ct. at 2267. BCBST—which administers Plaintiffs' Plans, Compl. ¶134-35—itself excludes coverage for "facial feminization" surgeries for "gender reassignment," labeling them "cosmetic."[3] And the mere fact that State policymakers have kept the Exclusion in place for years does not establish intentional, invidious discrimination. The inquiry here is whether the Exclusion is "inexplicable by anything but animus." *Trump v. Hawaii*, 138 S.Ct. 2392, 2421 (2018). Of course, a regulation "premised only on animus toward the transgender community" would not cover psychological treatment and counseling to alleviate gender dysphoria, as the Plans do here. *L.W.*, 2023 WL 6321688, at *19. Neither "risk aversion" nor "fair-minded policy dispute[s]" about the most efficient way to fund healthcare for public employees "shows animus." *Id.*

### B. Transgender individuals do not constitute a suspect class under the Equal Protection Clause.

The challenged Exclusion does not draw distinctions based on transgender status. But even if

---

[3] *See* BCBST Policy Manual, https://www.bcbst.com/mpmanual/!SSL!/WebHelp/Gender_Reassignment.htm.

it did, "rational basis review applies." *L.W.*, 2023 WL 6321688, at *18. Plaintiffs do not dispute that transgender status—unlike existing protected classes—"is not 'definitively ascertainable at the moment of birth.'" *Id.* (citing *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015)). Nor is it "necessarily immutable." *Id.* (acknowledging the existence of detransitioners who no longer identify as transgender). And instead of being a "discrete group," *Bowen v. Gilliard*, 483 U.S. 587, 602 (1987), the WPATH guidelines referenced in Plaintiffs' Complaint (¶47) indicate the term "transgender" can describe "a huge variety of gender identities and expressions." *L.W.*, 2023 WL 6321688, at *18. The regulation of medical treatments, including State action "designed to allocate benefits," also "poses fraught line-drawing dilemmas" best left to the democratic process rather than the federal judiciary. *Id.* (citing *Glucksburg*, 521 U.S. at 720). And the Sixth Circuit has rejected the notion that transgender individuals today constitute a "politically powerless group." *Id.* at *19. The Department of Justice's appearance in support of Plaintiffs only further proves the point. *See* Statement of Interest [ECF 65].

### C. The Exclusion satisfies judicial scrutiny.

Because the Exclusion does not discriminate against any constitutionally protected class, rational basis review applies. Plaintiffs urge the Court to second-guess State policymakers regarding their allocation of healthcare benefits. But rational basis review is "designed to respect the constitutional prerogatives of democratically accountable legislatures and executives." *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 7 F.4th 478, 483 (6th Cir. 2021) (en banc). "[A]ny conceivable rational basis support[ing]" the Exclusion will suffice. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 790 (6th Cir. 2005). Deference is given to State policymakers, "not to medical experts or trial court findings." *Id.*

Plaintiffs point to guidelines adopted by WPATH and endorsed by various medical organizations to support their argument that the Exclusion lacks a rational basis. Resp. at 20. But the Sixth Circuit recently recognized that "the relevant medical and regulatory authorities are not of one mind about the cost-benefit tradeoffs" of these types of treatments. *L.W.*, 2023 WL 6321688, at *11. "The unsettled, developing, in truth still experimental, nature of treatments in this area surely permits more than one policy approach, and the Constitution does not favor one over the other." *Id.* at 20. Tennessee "may reasonably conclude" that a treatment used for one purpose has a different cost-benefit ratio

when used for another. *Id.* at *13 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445-46 (1985)). And it is not irrational for State policymakers to allocate limited resources to "other helpful, less risky, and non-irreversible treatments" for gender dysphoria. *Id.*

To that point, Plaintiffs suggest that the only "alternative" to surgery for treatment of gender dysphoria under the Program is "conversion therapy." Pltf. Resp. at 21. But that allegation appears nowhere in the Complaint, and it contradicts the plain terms of the Plan Documents. The Plans, in fact, cover "psychological treatment and counseling" to help alleviate the "anxiety, depression, difficulty with social functioning, and suicidality" associated with gender dysphoria. Compl. at ¶46.

Plaintiffs do not dispute that increasing coverage would increase the financial burden to both Tennessee and other Plan members. Instead, they frame the costs of their desired surgeries as "trivial." Resp. at 21-22. But under rational-basis review, the Exclusion "remains constitutional even if—to the judge's eye—it seems to offer 'little if any benefit.'" *Bristol*, 7 F.4th at 483 (quoting *June Medical Servs. v. Russo*, 140 S.Ct. 2103, 2137 (2020) (Roberts, C.J. concurring)). The State cannot cover every treatment for every diagnosis, even those considered medically necessary. These types of complex, line-drawing decisions fall within the wide discretion afforded State policymakers. *See* Def. Mem. at 14-15.

Unable to "negative every conceivable basis which might support" the Exclusion, *Armour v. City of Indianoapolis*, 566 U.S. 673, 681 (2012), Plaintiffs again pivot to allegations of "anti-transgender animus." Resp. 689. As discussed above, Plaintiffs present no facts that would establish such a claim.

## IV. Plaintiffs fail to state a plausible claim under Title VII.

### A. Zinner's Title VII claims are time-barred.[4]

Even applying a 300-day period for filing an administrative charge, Zinner's Title VII claim is untimely. Compl. ¶¶38, 64-69. Zinner did not file a charge with the EEOC for nearly two years after learning that the Plan excluded sex transformation surgery. *Id.* Any subsequent denial of coverage was for a non-discriminatory reason—the procedures were subject to the Exclusion. *See* Compl. ¶27 n.1. As such, a Title VII plaintiff must timely challenge the Exclusion itself, not a later denial applying the

---

[4] After further review, Defendants concede that VanNess' charge of discrimination appears to have been timely filed based on the allegations set forth in the Complaint.

same exclusion. *See Hebron v. Shelby Cnty. Govt.*, 406 Fed. Appx. 28, 30 (6th Cir. 2010) ("Under federal law, the limitations clock begins to run when the claimants know or should have known that the defendant violated their rights, which occurs when the claimants learn of an illegal action, not when the claimants feel the effects of the action." (citations omitted)). For example, a professor's claim that he was unlawfully denied tenure was time-barred because it was the denial of tenure, not his subsequent termination, that started the limitations period. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

The Lilly Ledbetter Fair Pay Act of 2009 (the "FPA") does not save Zinner's claim. *See* 42 U.S.C. § 2000e-5(e)(3)(A). The FPA extends only to "discrimination in compensation"—i.e., pay disparity. *See Squires v. City of Detroit*, 2011 WL 2143116 n.4 (E.D. Mich. 2011) (holding FPA "applies only to wage and salary compensation"); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1175 (10th Cir. 2011) (defining discrimination in compensation as "unequal pay for equal work"). But even if the FPA reached beyond wages and salary, the Plans here are "governed by the same terms," Compl. ¶27 n.1., and all members receive the same benefits.

### B. Plaintiffs fail to establish a Title VII claim on the merits.

Plaintiffs misconstrue *Bostock*. That case addressed a funeral home employee who had been fired "simply for *being* … transgender." *Bostock*, 140 S.Ct. 1731, 1753 (2020). The Court "proceed[ed] on the assumption that 'sex'" was a "biological distinction[] between male and female" and explicitly "agree[d]" with the defendants that "transgender status" is a "distinct concept[] from sex." *Id.* at 1739, 1747. Even so, the Court found a Title VII violation because the employer punished a male employee for behavior it tolerated for female employees. *Id.* at 1744. In other words, "changing the employee's sex" would have "yielded a different choice." *Id.*, at 1741. But here, surgeries used to treat a purely psychological condition are excluded regardless of the Plan member's sex. And, as shown above, the Exclusion makes no distinction based on transgender status. *See Geduldig*, 417 U.S. at 496 n.20.

Plaintiffs also fail to demonstrate that they were treated worse than other Plan members "similarly situated in all respects" because of their transgender status. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Instead, they attempt to argue that no comparator is necessary under Title VII because the Exclusion itself constitutes "direct evidence of discrimination," Resp. at 5 (citing *Mitchell*,

964 F.2d at 582 n. 4). But their argument is based on the same flawed logic about "exact same" surgeries, *id.*, that has been rejected by the Sixth Circuit, as discussed above. Plaintiffs' friends at the Department of Justice make the same mistake. *See* Statement of Interest, at 8-9. To be sure, the Plans do not penalize Plaintiffs for traits or actions tolerated in members of the opposite sex, as was the case in *Bostock*. Instead, they provide Plaintiffs coverage for the *same* treatments for the *same* diagnoses as every other member. Each Plan's exclusions—all 50 of them—apply to *all* enrollees without regard to any particular trait. Insurance programs do not provide lesser compensation simply due to the "underinclusiveness of the set of risks that the State has elected to insure." *Geduldig*, 417 U.S. at 494.

Plaintiffs' Response also raises new claims regarding sex characteristics and sex stereotypes not mentioned anywhere in the Complaint. Resp. at 4. But the cases Plaintiffs cite in support of the same—*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 575 (6th Cir. 2018), and *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), involved employees who were fired based on their failure to conform to stereotypes concerning a man's dress and appearance—something the Exclusion does not regulate. *See L.W.*, 2023 WL 6321688, at *17. Recognizing the biological differences between the sexes "does not amount to stereotyping." *Id.* at 18; *accord Eknes-Tucker v. Alabama*, 2023 WL 5344981, at *17 (11th Cir. 2023). Plaintiffs' reasoning would essentially nullify *Dobbs* and *Geduldig*. *Id.*

Plaintiffs further argue that Title VII does not require allegations of intentional discrimination where an employer maintains an "explicit gender-based policy," Resp. 673 (quoting *Johnson Controls*, 499 U.S. at 199-200 (involving fertility-protection policy that limited occupational opportunities only for women)). But no such policy exists in this case, as previously discussed.

**V.     Zinner fails to state a plausible claim against UT under Title IX.**

    **A.     Zinner's Title IX claim is time-barred.**

The one-year statute of limitation under Title IX began to run no later than when Plaintiffs learned that the Exclusion would preclude them from receiving their sought-after surgeries, and it expired long before Plaintiffs brought suit. Neither of the exceptions raised by Plaintiffs applies.

Although "discrete discriminatory acts" within the statute of limitations may be actionable, such acts must be "independently discriminatory." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)

9

(quoting *Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). The denial of coverage was simply a legal application of the Exclusion; it was not independently discriminatory. *See* IV.A, *supra*. Furthermore, the Exclusion is not evidence of a "longstanding and demonstrable policy of discrimination" because, as discussed above, it applies to all Plan members. *See L.W.*, 2023 WL 6321688, at *24.

Additionally, the Sixth Circuit has been "extremely reluctant to apply" the continuous-violation doctrine "outside the context of Title VII." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995). This Court has agreed with "courts in this circuit and elsewhere [that] have concluded that the doctrine does not apply in Title IX cases." *Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 735 (M.D. Tenn. 2018). (§ 1983).

### B. Zinner fails to establish a Title IX claim on the merits.

Plaintiffs argue that Title IX's prohibition of discrimination "on the basis of sex" encompasses "discrimination based on transgender status." Resp. at 8. But the Sixth Circuit has declined to extend *Bostock's* reasoning beyond Title VII. *L.W.*, 2023 WL 6321688 at *16 (citing, *e.g., Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) (reasoning that Title VII analysis does not apply to Title IX). Title IX was designed to increase opportunities for women and girls in education, not to eliminate societal recognition of biological distinctions between the sexes. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 523-25 (1982). "Absent indication that 'sex,' as it is used in the statute, means something more expansive tha[n] biological sex," this Court "presumes 'sex' has its ordinary meaning." *D.H. v. Williamson Cnty.*, 638 F.3d 821, 836 (M.D. Tenn. Nov. 2, 2022).

Plaintiffs further assert that UT discriminates based on sex merely "by providing an employee health plan with the Exclusion." Resp. at 8. As noted above, UT cannot offer any other health plan and plays no role in determining which medical treatments are covered or excluded under the Plan. Regardless, UT cannot be liable under Title IX because the Plan treats all members equally and does not single out Plaintiffs for less favorable treatment based on either sex or transgender status.

## CONCLUSION

Plaintiffs' claims against each of these Defendants should be dismissed as a matter of law.

Dated: October 3, 2023						Respectfully submitted,

						*/s/ Steven J. Griffin*
						Steven J. Griffin (Bar No. 40708)
						  Senior Counsel
						Ryan N. Henry (Bar No. 40028)
						Reed N. Smith (Bar No. 40059)
						Brooke A. Huppenthal (Bar No. 40276)
						  Assistant Attorneys General
						OFFICE OF THE TENNESSEE ATTORNEY
						GENERAL & REPORTER
						P.O. Box 20207
						Nashville, TN 37202-0207
						Phone: 615-741-9598
						steven.griffin@ag.tn.gov
						ryan.henry@ag.tn.gov
						reed.smith@ag.tn.gov
						brooke.huppenthal@ag.tn.gov

						*Counsel for State Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2023, the undersigned filed the foregoing document using the Court's Electronic Court-Filing system, which sent notice of filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Ezra Cukor<br>Z. Gabriel Arkles<br>Shayna Medley<br>Transgender Legal Defense and Education Fund, Inc.<br>520 8th Ave, Ste. 2204<br>New York, NY 10018<br>Telephone: (646) 862-9396<br>Facsimile: (646) 993-1686<br>ecukor@transgenderlegal.org<br>garkles@transgenderlegal.org<br>agreen@transgenderlegal.org<br>smedley@transgenderlegal.org<br><br>J. Scott Hickman (No. 17407)<br>Sherrard Roe Voigt & Harbison, PLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4200<br>Facsimile: (615) 742-4539<br>shickan@srvhlaw.com<br><br>Phillip F. Cramer (No. 20697)<br>Sperling and Slater, LLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4535<br>pcramer@sperling-law.com<br><br>Darren Teshima<br>Udit Sood<br>Covington & Burling, LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, California 94105-2533<br>Telephone: (415) 591-6000<br>Facsimile: (415) 591-6091<br>E-mail: DTeshima@cov.com | Counsel for Plaintiffs |

| | |
|---|---|
| E-mail: USood@cov.com<br><br>Natalie Ritchie<br>Elaine H. Nguyen<br>Covington & Burling, LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Facsimile: (202) 778-5465<br>E-mail: NRitchie@cov.com<br>E-mail: ENguyen@cov.com<br><br>Robert Winson<br>Covington & Burling, LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749<br>E-mail: RWinson@cov.com | |
| David M. Sanders<br>Jessica Jernigan-Johnson<br>Knox County, Tennessee<br>400 W. Main St., Suite 612<br>City-County Building<br>Knoxville, Tennessee 37902<br>Telephone: 865-215-3236<br>Facsimile: 865-215-2936<br>David.Sanders@knoxcounty.org<br>Jessica.Johnson@knoxcounty.org | Counsel for Defendant Knox County Board of Education |
| Kimberly S. Veirs<br>S. Jae Lim<br>United States Attorney's Office<br>719 Church Street, Suite 3300<br>Nashville, TN 37203<br>Telephone: (615) 736-5151<br>Kimberly.Veirs@usdoj.gov<br>Jae.Lim@usdoj.gov | Counsel for Interested Party United States of America |

                Respectfully submitted,

                */s/ Steven J. Griffin*
                STEVEN J. GRIFFIN