IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GERDA ZINNER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-cv-00535 |
| | ) | |
| STATE OF TENNESSEE, ET AL. | ) | Judge Aleta A. Trauger |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
STATE DEFENDANTS' JOINT MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

    A.  The State's Healthcare Program and Longstanding Exclusions of
        Coverage ...........................................................................................................2

    B.  Plaintiffs' Denial of Coverage Under the Exclusion…………………………………….3

STANDARD OF REVIEW…..........................................................................................4

ARGUMENT…………….....…………………………………………………………..5

    I.        Plaintiffs Fail to State a Plausible Equal Protection Claim…………………….…..5

        A.  The Exclusion does not implicate heightened scrutiny…………………….…..5

        B.  The Exclusion satisfies rational-basis review………...…………………….…..8

    II.      Plaintiffs Fail to State a Plausible Title VII Claim……………………………….…10

        A.  Plaintiffs' Title VII claims are time-barred………….…………………………….10

        B.  Plaintiffs fail to establish a Title VII claim on the merits………………….…12

        C.  State Defendants are not VanNess' employer for purposes of Title VII……….14

        D.  Plaintiffs failed to exhaust administrative remedies regarding hormone claims.…15

    III.    Zinner Fails to State a Plausible Title IX Claim……………………………….…16

        A.  Zinner's Title IX claim is time-barred……………….……………………………16

        B.  Zinner fails to establish a Title IX claim on the merits………………….…17

    IV.    Zinner lacks standing to assert any claims against UT…………………….…19

    V.     Zinner lacks standing for prospective relief…………….………………….…20

CONCLUSION…………………………………………………...………………………20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022)..................................................................................................18

*Adkins v. Pilot Flying J*,
2023 WL 4306735 (E.D. Tenn. June 30, 2023) ......................................................................11

*Almond v. Unified Sch. Dist. No. 501*,
665 F.3d 1174 (10th Cir. 2011)...............................................................................................11

*Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*,
463 U.S. 1073 (1983).................................................................................................................15

*Armour v. City of Indianapolis, Ind.*,
566 U.S. 673 (2012) ...................................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 4, 12

*B.P.J. v. W. Va. St. Bd. of Educ.*,
2023 WL 111875 (S.D. W.V. Jan. 5, 2023) ...........................................................................19

*Banerjee v. Univ. of Tenn.*,
820 F. App'x 322 (6th Cir. 2020) ...........................................................................................11

*Bannister v. Knox Cnty. Bd. of Ed.*,
49 F.4th 1000 (6th Cir. 2022)..................................................................................................16

*Bassett v. National Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008).....................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 4, 12

*Bostock v. Clayton Cnty.*,
140 S.Ct. 1731 (2020) ................................................................................................................ 12, 18

*Broadway v. United Parcel Serv., Inc.*,
499 F. Supp. 2d 992 (M.D. Tenn. 2007) ...............................................................................11

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) ....................................................................................................4

*Cataldo v. U.S. Steel Corp.*,
676 F.3d 542 (6th Cir. 2012) ..................................................................................................16

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ....................................................................................................................6

*Courie v. Alcoa Wheel & Forged Prods.*,
577 F.3d 625 (6th Cir. 2009) ..................................................................................................13

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) ....................................................................................................5

*Del. State Coll. v. Ricks*,
449 U.S. 250 (1980) ..................................................................................................................11

*Diamond v. Charles*,
476 U.S. 54 (1986) ....................................................................................................................20

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) ........................................................................................................... 7, 8

*Franciscan Alliance, Inc. v. Burwell*,
227 F. Supp. 3d 660 (N.D. Tex. 2016) ..................................................................................18

*Gann v. Schramm*,
606 F. Supp. 1442 (D. Del. Apr. 18, 1985) ............................................................................7

Case 3:23-cv-00535     Document 93     Filed 12/06/23     Page 4 of 33 PageID #: 928

*Geduldig v. Aiello*,
   417 U.S. 484 (1974) ................................................................................................................passim

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ...........................................................................................................................9

*Gore v. Lee*,
   2023 WL 4141665 (M.D. Tenn. June 22, 2023) ...................................................................5

*Grandell v. Ohio Supreme Court*,
   252 F.3d 828 (6th Cir. 2001) ........................................................................................................20

*Green v. Postmaster Gen. of U.S.*,
   437 F. App'x 174 (3d Cir. 2011) ................................................................................................16

*HDC, LLC v. City of Ann Arbor*,
   675 F.3d 608 (6th Cir. 2012) ........................................................................................................13

*Hebron v. Shelby Cnty. Govt.*,
   406 Fed. Appx. 28 (6th Cir. 2010) ...........................................................................................11

*Heller v. Doe ex rel. Doe*,
   509 U.S. 312 (1993) ...........................................................................................................................9

*Hughes v. Sanders*,
   469 F.3d 475 (6th Cir. 2006) ..........................................................................................................4

*Keys v. Humana, Inc.*,
   684 F.3d 605 (6th Cir. 2012) ........................................................................................................12

*L.W. ex rel. Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) ..............................................................................................passim

*Lenox v. Healthwise of Ky., Ltd.*,
   149 F.3d 453 (6th Cir. 1998) ........................................................................................................13

iv

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................................20

*Marie v. Am. Red Cross*,
771 F.3d 344 (6th Cir. 2014) .............................................................................................5

*Martin v. Masco Indus. Emps.' Benefit Plan*,
747 F. Supp. 1150 (W.D. Pa. 1990) .................................................................................13

*Mathews v. Diaz*,
426 U.S. 67 (1976) .............................................................................................................9

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ...........................................................................................................14

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ...........................................................................................17

*Mitchell v. Toledo Hosp.*,
964 F.2d 577 (6th Cir. 1992) ...........................................................................................12

*Mixon v. State of Ohio*,
193 F.3d 389 (6th Cir. 1999) .............................................................................................4

*Mullen v. Boyd Gaming Corp.*,
182 F.3d 914 (5th Cir. 1999) ...........................................................................................13

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .........................................................................................................10

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) .........................................................................................................11

*Neese v. Becerra*,
640 F.Supp.3d 668 (N.D. Tex. 2022) ...............................................................................18

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP,*
   336 F.3d 495 (6th Cir. 2003) ...................................................................................................4

*Olivarez v. T-mobile USA, Inc.,*
   997 F.3d 595 (5th Cir. 2021) .................................................................................................13

*Ondo v. Cty. of Cleveland,*
   795 F.3d 597 (6th Cir. 2015) ...................................................................................................8

*Paterek v. Vill. of Armada, Michigan,*
   801 F.3d 630 (6th Cir. 2015) ...................................................................................................6

*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1 (1981) ...................................................................................................................19

*Peters v. Wayne State Univ.,*
   691 F.2d 235 (6th Cir. 1982) .................................................................................................15

*Pierce v. Cmmw. Life Ins. Co.,*
   40 F.3d 796 (6th Cir. 1994) ...................................................................................................15

*Reed v. Reed,*
   404 U.S. 71 (1971) ...................................................................................................................6

*Ricci v. DeStefano,*
   557 U.S. 557 (2009) .......................................................................................................... 12, 13

*Rosa H. v. San Elizario Independent Sch. Dist.,*
   106 F.3d 648 (5th Cir. 1997) .................................................................................................17

*Saks v. Franklin Covey Co.,*
   316 F.3d 337 (2d Cir. 2003) ..................................................................................................13

*Snyder-Hill v. Ohio State Univ.,*
   48 F.4th 686 (6th Cir. 2022) ..................................................................................................16

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016).................................................................................................20

*Squires v. City of Detroit,*
    2011 WL 2143116  (E.D. Mich. 2011) ........................................................................11

*Swallows v. Barnes & Noble Book Stores, Inc.,*
    128 F.3d 990 (6th Cir. 1997) .............................................................................. 14, 15

*Trump v. Hawaii,*
    138 S.Ct. 2392 (2018)...................................................................................................8

*U.S. R.R. Ret. Bd. v. Fritz,*
    449 U.S. 166 (1980) ......................................................................................................8

*Ulmer v. Dana Corp.,*
    200 F. Supp. 2d 804 (N.D. Ohio 2002)......................................................................16

*Vaughn v. Louisville Water Co.,*
    302 F. Appx. 337 (6th Cir. 2008) ...............................................................................11

*U.S. v. Virginia,*
    116 S. Ct. 2264 (1996).................................................................................................10

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ....................................................................................................10

*Williams v. Kelly,*
    2018 WL 4403381. (E.D. La. Aug. 27, 2018) ..............................................................7

*Williamson v. Lee Optical of Oklahoma Inc.,*
    348 U.S. 483 (1955) ................................................................................................. 8, 9

*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2012)....................................................................................14

*Yick Wo v. Hopkins,*
  118 U.S. 356 (1886) ..................................................................................................................10

*York v. Tennessee Crushed Stone Ass'n,*
  684 F.2d 360 (6th Cir. 1982) ..................................................................................................15

*Younis v. Pinnacle Airlines, Inc.,*
  610 F.3d 359 (6th Cir. 2010) ........................................................................................... 10, 15

**Statutes**

20 U.S.C. § 1681 .............................................................................................................. 17, 18

20 U.S.C. § 1686 ..................................................................................................................19

42 U.S.C. § 2000e-2 ............................................................................................................14

42 U.S.C. § 2000e-5 .....................................................................................................10, 11, 15

Tenn. Code Ann. § 4-3-1001 ...............................................................................................15

Tenn. Code Ann. § 8-27-101 ................................................................................................2

Tenn. Code Ann. § 8-27-202 ................................................................................................3

Tenn. Code Ann. § 8-27-203 ................................................................................................3

Tenn. Code Ann. § 8-27-301 ...............................................................................................15

Tenn. Code Ann. § 8-27-302 ...............................................................................................14

Tenn. Code Ann. § 8-27-303 .......................................................................................... 3, 15

Tenn. Code Ann. § 8-27- 303 ...............................................................................................15

Tenn. Code Ann. § 28-3-104 ...............................................................................................16

Tenn. Code Ann. § 68-33-101 ...............................................................................................9

U.S. Const. amend. XIV, § 1 .................................................................................................5

U.S. Const. art. III, § 2, cl. 1 ...............................................................................................19

Regulations

34 C.F.R. § 106.37(c)(1) ...................................................................................................19

**Rules**

Federal Rule of Civil Procedure 12(b)(1)...............................................................................4

Federal Rule of Civil Procedure 12(b)(6)...............................................................................4

Case 3:23-cv-00535    Document 93    Filed 12/06/23    Page 10 of 33 PageID #: 934

## INTRODUCTION

The State of Tennessee Comprehensive Medical and Hospitalization Program ("Program") provides health care benefits to nearly 300,000 individuals. Like all other state and federal employer-sponsored health plans, the Program's plans have coverage exclusions—*i.e.*, treatments and procedures that plans do not cover, regardless of medical necessity. Such exclusions are generally lawful, and for good reason. No plan could feasibly cover all possible means of addressing all health issues.

Plaintiffs, who identify as transgender women, nonetheless challenge their denial of coverage for sex reassignment surgery and related treatments under the Program's longstanding exclusion of coverage for "surgery or treatment for, or related to, sex transformations … other than psychological treatment or counseling." Am. Compl. ¶166. The Amended Complaint seeks various relief on the basis that this coverage exclusion violates the federal Equal Protection Clause, Title VII, and Title IX by discriminating on the basis of sex and transgender status. This Court should dismiss all claims.

Plaintiffs' core premise is that the Program unlawfully classifies and discriminates against them as transgender participants in its group health plans. But the Program's plans provide all participants the same health benefits to protect against the same health risks. And the challenged sex-transformation exclusion applies to all participants irrespective of their sex or any other trait. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), confirms Plaintiffs lack any viable path to victory in this scenario, and the Title VII and Title IX analysis does not cut differently.

Many of Plaintiffs' claims also fail on procedural grounds. Zinner lacks standing to assert any claims against the University of Tennessee ("UT") due to the absence of causation or redressability. None of the State Defendants are considered VanNess' employer under Title VII. And Plaintiffs' claims under Title VII and Title IX are untimely.

Because, as a matter of law, Plaintiffs cannot prevail on any of their claims, the State Defendants respectfully request dismissal of the Amended Complaint in its entirety.

## BACKGROUND[1]

### A.    The State's Healthcare Program and Longstanding Exclusions of Coverage.

The challenged Program provides healthcare benefits to 290,000 enrollees, including eligible public employees, retirees, and dependents. Am. Compl. ¶7. Statutorily created insurance committees approve the Program's group health plans, including the State Plan, Local Education Plan, and Local Government Plan. Am. Compl. ¶¶28-33; Tenn. Code Ann. § 8-27-101, *et seq.* Among other things, these committees determine the premiums, benefits package, funding, and eligibility provisions of the plans they oversee. *Id.* They also approve contracts with third-party insurance companies, such as BlueCross, Cigna and CVS, who administer each plan. *Id.* § 8-27-103(a). Although employees may choose their third-party claims administrators, the scope of each plan's coverage is controlled by its approved Plan Document. *See* State Plan Doc. (Ex. 1); Local Ed. Plan Doc (Ex. 2).[2] The Division of Benefits Administration of the Tennessee Department of Finance and Administration ("DFA") staffs the committees and performs delegated administrative duties. Tenn. Code Ann. § 8-27-101(b), -(c).

Neither the State Plan nor Local Education Plan covers every medical treatment participants may want or need. Both Plans exclude over 50 categories of medical and mental health/substance abuse services from coverage, as well as coverage for dental expenses, on-the-job injuries, and non-behavioral mental health/substance abuse expenses. Ex. 1, at 13.04(A)-(D); Ex. 2, at 13.04(A)-(D). If the Plan Document excludes a service, coverage will be denied regardless of whether it is considered "medically necessary." Ex. 1, at 13.01(A); Ex. 2, at 13.01(A). Services must be included in the Plan for a claims administrator to conduct a "medical necessity" analysis. *Id.* Exclusions are applied across-the-board, regardless of any member's sex or transgender status.  Ex. 1, at 13.01, .04; Ex. 2, at 13.01, .04.

---

[1] As required, this Memorandum assumes but does not concede the truth of the facts alleged.

[2] Defendants have attached the 2022 versions of the State Plan Document and the Local Education Plan Document, which the Amended Complaint references throughout. There have been no material changes to the relevant provisions during the period at issue. Am. Compl. ¶168.

2

Both the State Plan and Local Education Plan have long excluded coverage for "[s]urgery or treatment for, or related to, sex transformations or sexual dysfunctions or inadequacies, including penile prosthesis[,] due to psychogenic impotence[,] other than psychological treatment or counseling" ("the Exclusion"). Ex. 1, at 13.04(A)(28); Ex. 2, at 13.04(A)(28).[3] The Exclusion is based only on the *purpose* of the procedure—sex transformation—and not any other variable, and thus applies equally to members of both sexes and without regard to transgender status. As with other exclusions, if a service is excluded from coverage, coverage requests are denied without any analysis of medical necessity. *Id.*

### B. Plaintiffs' Denial of Coverage Under the Exclusion.

Plaintiffs are biological males who identify as transgender women. Am. Compl. ¶53. Each alleges current or prior enrollment in a State Plan or Local Education Plan administered by BlueCross.

Plaintiff Zinner was enrolled in a State Plan while employed by UT from 2019 through 2023, but that enrollment ceased when Zinner left employment at UT. Am. Compl. ¶¶25, 96. The State Plan is the only group insurance plan UT can offer its employees, with the State funding 80 percent of the costs and member premiums covering the rest. *Id.* ¶35; Tenn. Code Ann. § 8-27-203(a). UT offers the State Plan to its employees but does not determine or administer Plan benefits. Plaintiff VanNess is employed by Knox County Board of Education and is enrolled in the Local Education Plan. Am. Compl. ¶26. Relevant benefits are funded partly by the State and the members' local education agency, depending on legislative appropriations, and partly by member premiums. Tenn. Code Ann. § 8-27-303(a). Plaintiff Hamel is employed by the Tennessee Department of Environment and Conservation ("TDEC") and enrolled in the State Plan, which, is the only group plan TDEC can offer. Am. Compl. ¶¶27, 36. TDEC does not determine or administer Plan benefits. Tenn. Code Ann. § 8-27-202.

---

[3] Plaintiffs' Plan Documents also generally exclude "[c]harges incurred in connection with cosmetic surgery directed toward preserving or improving a patient's appearance," including rhinoplasty and "reconstructive surgery where no significant anatomic functional impairment exists." Ex. 1, at 13.04(A)(16); Ex. 2, at 13.04(A)(16). The procedures sought by Plaintiffs here would be considered cosmetic for nearly all other Plan members and would, therefore, likewise be excluded from coverage.

Plaintiffs have gender dysphoria and assert that surgery is necessary to help alleviate this condition. Am. Compl. ¶¶5. Zinner seeks to remove male genitalia and construct a vagina (vaginoplasty). *Id.* ¶¶72-73. VanNess sought breast "augmentation" and "facial feminization" surgery . *Id.* ¶111. Hamel had breast "augmentation" and seeks further surgeries. *Id.* ¶¶139, 143. Plaintiffs also sought coverage for certain hormone treatments for gender-dysphoria. *Id.* ¶¶85, 88, 93, 113-14, 124, 136-37, 141.

Applying the Exclusion, BlueCross and third-party pharmacy-benefit administrator CVS Caremark denied Plaintiffs preauthorization of coverage for their requested surgeries and hormone medications, respectively. *Id.* Plaintiffs have not alleged misapplication of the Exclusion by BlueCross or CVS Caremark—only that the Exclusion is unlawful.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss asserts that the court lacks jurisdiction over the subject matter, and here is governed by essentially the same standard as that applicable to a motion to dismiss brought under Rule 12(b)(6). *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires "more than the bare assertion of legal conclusions"; it requires "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006). While this Court accepts the truth of Plaintiffs' allegations, it need not accept "a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or "unwarranted factual inferences," *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

Documents attached to a motion to dismiss may be considered if they are referred to in the complaint and are central to the claims contained therein. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also take judicial notice of public records. *See New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

4

**ARGUMENT**

**I.    Plaintiffs Fail to State a Plausible Equal Protection Claim.**

Plaintiffs first allege violations of the Equal Protection Clause, which prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state such a claim, Plaintiffs must "adequately plead" that (1) "the government treated [them] disparately" compared to "similarly situated" individuals, and (2) that "such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). Plaintiffs cannot do so.

**A.    The Exclusion does not implicate heightened scrutiny.**

Plaintiffs cannot satisfy the "threshold" requirement of showing "disparate treatment," *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014), let alone link that treatment to a suspect classification.

At the outset, the facts and the law foreclose any theory that the Exclusion triggers heightened review because it discriminates against transgender persons as a class. On the facts, Plaintiffs are wrong that the exclusion even implicates transgender status. Plaintiffs protest that non-transgender plan members "can receive coverage for the *same care* that is denied to transgender enrollees" when that treatment is not for the purpose of "sex transformations." Am. Compl. ¶12. But such difference in coverage reflects only a difference in treated conditions. *See L.W.*, 83 F.4th at 481 ("States may permit varying treatments of distinct diagnoses"). The Program excludes *all* surgeries and related treatments for the purpose of sex transformation (other than psychological treatment or counseling), *regardless* of a person's transgender status. Transgender persons are not the only ones who pursue sex-transformation surgery, *Gore v. Lee*, No. 3:19-cv-0328, 2023 WL 4141665, *15 (M.D. Tenn. June 22, 2023); nor do all transgender persons pursue such surgery. And the Plans deny coverage of surgery for *any* psychological condition, not just gender dysphoria. The Exclusion thus does not single out transgender individuals for lesser treatment.

Regardless, *L.W.* holds that transgender persons are not presently a suspect class for equal-protection purposes, and that correct analysis governs here. *L.W.*, 83 F.4th at 486-87. So even accepting

5

Plaintiffs' flawed factual premise, Plaintiffs would at most receive rational-basis review. Otherwise, *L.W.* leaves Plaintiffs a narrow path to triggering intermediate scrutiny: They must challenge the government's use of "sex classifications to bestow unequal treatment on men and women." *Id.* at 483. For several reasons, Plaintiffs have not and cannot allege such a challenge.

*First*, as *L.W.* reiterates, to qualify as sex discrimination under the Equal Protection Clause a policy must "prefer one sex over the other." *Id.* at 460 (citing *Reed v. Reed*, 404 U.S. 71, 76 (1971)). That is, discriminatory classifications allocate the "benefits and burdens between the sexes in different ways." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985). Here, though, the Exclusion even-handedly denies coverage for *all* procedures whose purpose is sex transformation—"regardless of [the] sex" of the individual seeking treatment. *L.W.*, 83 F.4th at 480. There is "no risk from which men are protected and women are not," or vice versa. *Geduldig v. Aiello*, 417 U.S. 484, 497 (1974). "Such an across-the-board regulation lacks any of the hallmarks of sex discrimination." *L.W.*, 83 F.4th at 480.

*Second*, Plaintiffs cannot permissibly reframe a classification that turns on the medical condition being treated into a sex-based classification. Here, Plaintiffs suggest that medical procedures used to treat physical injuries and diseases should be considered "the same procedures" when used to treat gender dysphoria—a psychological condition. Am. Compl. ¶175. Continuing, Plaintiffs argue that the Exclusion discriminates on the basis of sex because it sometimes allows biological females, but not transgender biological males, to receive certain surgeries and treatments (and vice versa).

*L.W.* and textbook equal-protection rules together foreclose Plaintiffs' argument. To advance an equal-protection claim, "similarly situated" individuals "must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2015). Applying this principle, *L.W.* confirmed that persons receiving hormones or surgery for gender dysphoria (there, the transgender-youth plaintiffs) are *not* similarly situated to those receiving such treatments for other reasons. 83 F.4th at 481. "Because the underlying condition and overarching goals differ," *L.W.* states, "it follows that the cost-

6

benefit analysis does too"—foreclosing the required "similarly situated" showing. *Id.*; *accord Gann v. Schramm*, 606 F. Supp. 1442, 1447 (D. Del. Apr. 18, 1985) ("[A] function of medical diagnosis is to determine in what ways individuals are *not similarly situated* so that they can be treated accordingly. Such rationally based differentiation clearly does not violate the equal protection clause."). So too here: females seeking breast "reconstruction" following a mastectomy to treat breast cancer—which is covered under the Plan, *see, e.g.,* Local Ed. Plan at Sec. 13.02(P)(13)—are not "similarly situated" to a male seeking breast "augmentation" for gender dysphoria. Both men and women can receive coverage for the former; *no one* can receive coverage for the latter. Likewise, females seeking vaginoplasty to treat childbirth defects, vaginal trauma, or congenital abnormalities are not "similarly situated" to males seeking vaginoplasty for gender dysphoria—which requires removing male genitalia and creating a vagina where none existed.

It makes no constitutional difference that a denied procedure may differentially implicate sex—*e.g.*, only males can use a vaginoplasty as a transition treatment, and only females can use a phalloplasty. After all, in *L.W.* all agreed "only females can use testosterone as a transition treatment," and only "males can use estrogen as a transition treatment." *L.W.*, 83 F.4th at 481. Yet the Sixth Circuit confirmed that even if "only one sex can undergo" a treatment, that does not "trigger heightened constitutional scrutiny." *Id.* (citing *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2245-46 (2022); *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974)). *L.W.*'s reasoning applies. Indeed, if a law restricting a medical procedure that applies only to women does not trigger heightened scrutiny, as in *Dobbs* and *Geduldig*, neither does the Exclusion. *Id.*

Applying these principles confirm that Plaintiffs are similarly situated only to those seeking sex-transformation procedures to treat gender dysphoria. Plaintiffs point to no such comparator. *Cf. Williams v. Kelly*, 2018 WL 4403381 at *12. (E.D. La. Aug. 27, 2018) (dismissing equal-protection claim of gender-dysphoric plaintiff denied a sex-transforming vaginoplasty on this ground), *adopted by Williams v. Kelly*, 2018 WL 4386178 (E.D. La. Sept. 14, 2018)).

*Third*, when State action facially "treat[s] both sex equally," as the Exclusion does, a challenger must demonstrate that the State adopted the regulation "because of, not in spite of, any alleged unequal treatment." *L.W.*, 83 F.4th at 483 (citation omitted); *see Dobbs*, 142 S. Ct. at 2245-46 (noting "mere pretex[t]" theory (quoting *Geduldig*, 417 U.S. at 496 n.20)). To do so, Plaintiffs must show that the Exclusion is "inexplicable by anything but animus." *Trump v. Hawaii*, 138 S.Ct. 2392, 2421 (2018). But a regulation "premised only on animus toward the transgender community" would not provide coverage for psychological treatment and counseling to alleviate gender dysphoria, as the Plans do here. *L.W.*, 83 F.4th at 487. Neither policymakers' longstanding maintenance of the Exclusion nor major medical organizations' opposition to it, *Dobbs*, 142 S.Ct. at 2267, establishes intentional discrimination. Indeed, BlueCross itself excludes coverage for "facial feminization" surgeries for "gender reassignment" in its own plans, labeling them "cosmetic."[4] Nor do "fair-minded policy dispute[s]" about the most efficient way to fund healthcare for public employees "show[] animus." *Id.* Rather, State officials "are constitutionally free to include or exclude" surgeries and other treatment for the purpose of sex transformation "on any reasonable basis," even if that coverage is somewhat underinclusive. *Geduldig*, 417 U.S. at 496 n.20. As discussed next, policymakers here had plenty of reasonable bases for the Exclusion.

## B. The Exclusion satisfies rational-basis review.

As the Exclusion is subject to rational-basis review, it "enjoy[s] a 'strong presumption of validity.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015). This means a State need not "articulate its reasons" for taking government action. *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Rather, the Court may presume the Exclusion is constitutional if it can conceive of "plausible reasons for [the government] action." *Id.* The challenged Exclusion easily clears this bar because there are several plausible and permissible reasons why state policymakers "might have concluded" to exclude coverage for sex-transformation-based treatments. *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 487 (1955).

---

[4] *See* BCBST Policy Manual, https://tinyurl.com/y5bhrnbu.

8

For one, sex-transforming surgical and hormonal treatments are still often considered "new" or "experimental," and "the relevant medical and regulatory authorities are not of one mind" about using the excluded procedures to treat gender dysphoria. *L.W.*, 83 F.4th at 468, 477. Policymakers also reasonably could conclude that off-label uses of FDA-approved drugs for the purpose of sex transformation "present[ed] unacceptable dangers." *Id.* at 478 (citing Tenn. Code Ann. § 68-33-101(b), -(e), -(g)). And "other helpful, less risky, and non-irreversible treatments remain available" for treating gender dysphoria, *id.* at 468 (citing Tenn. Code Ann. § 68-33-101(c)), including "psychological treatment or counseling," which *are* covered by the Plans. States have wide discretion to regulate in areas, like this one, "where 'medical and scientific uncertainty' exists." *Id.* at 473 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)). Furthermore, while Plaintiffs attempt to downplay the potential costs to Plan members of eliminating the challenged Exclusion, Am. Compl. ¶178, it is indisputable that a totally comprehensive program would increase costs to the State, which has a legitimate interest in maintaining the self-supporting nature of the Program, keeping benefit payments for covered services at an adequate level, and maintaining the contribution rate at a reasonable level for participants. *Geduldig*, 417 U.S. at 495-96. Any one of these "conceivable bas[e]s" would suffice to sustain the law under rational-basis review, and indeed would satisfy intermediate scrutiny even if that standard applied. *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 681 (2012) (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)).

Further, even if some consider the excluded treatments sought by Plaintiffs to be "medically-necessary," Am. Compl. ¶5, "the law need not be in every respect logically consistent with its aims to be constitutional," *Williamson*, 348 U.S. at 487-88. This premise is particularly true where state officials "must necessarily engage in a process of line-drawing," *Fritz*, 449 U.S. 166, 179 (1980), such as in "[t]he task of classifying persons for medical benefits," *Mathews v. Diaz*, 426 U.S. 67, 83 (1976). Defining coverage "inevitably requires" the placement of claims "on different sides of the line." *Id.* The same applies here. State policymakers engaged in selective placement, differentiating between those medical

9

conditions and procedures they chose to insure and those they did not. This selection process did not involve an "arbitrary line" that divided Plan enrollees "into two classes." *Yick Wo v. Hopkins*, 118 U.S. 356, 368 (1886). The State's "line" not only excludes "[s]urgery or treatment for, or related to, sex transformations," but also for treatment of "sexual dysfunctions or inadequacies, including penile prosthesis due to psychogenic impotence" (Ex. 1, at 13.04(A)(28); Ex. 2, at 13.04(A)(28))—as well as dozens of other examples. (Ex. 1, at 13.04(A); Ex. 2, at 13.04(A)). The Constitution does not require the State to fund every non-emergency procedure Plan participants may want.

Ultimately, medical insurance, like education, "is not a 'one size fits all' business." *U.S. v. Virginia*, 518 U.S. 515, 542 (1996); *accord Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 553 (2012) (recognizing that an individual's health may dictate the scope of their insurance coverage needs). As mentioned above, "[r]egulation of treatments for gender dysphoria poses fraught line-drawing dilemmas, not unlike the problem facing regulations premised on wealth, age, and disability." *L.W.*, 83 F.4th at 486. But a constitutional democracy demands that policy choices occur in the "arena of public debate and legislative action." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Thus, the policy choices written into the Program's Plan Documents are for State policymakers to decide.

## II.  Plaintiffs Fail to State a Plausible Title VII Claim.

Plaintiffs' Title VII claims are time barred and moreover fail to adequately state a claim. Nor can VanNess bring a Title VII claim against State Defendants, who are not VanNess' employer.

### A.  Plaintiffs' Title VII claims are time-barred.

Prior to bringing a Title VII claim in court, a person aggrieved by allegedly discriminatory employment practices must first exhaust their administrative remedies by timely filing an administrative charge with the EEOC or an equivalent state agency. *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010). In Tennessee, a charge is timely if made within 300 days of the allegedly unlawful employment action. See 42 U.S.C. § 2000e-5(e)(1). Failure to properly

exhaust routinely requires dismissal. *See, e.g.*, *Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 330-32 (6th Cir. 2020); *Broadway v. United Parcel Serv., Inc.*, 499 F. Supp. 2d 992 (M.D. Tenn. 2007).

The Exclusion has been in place since at least 2016. Am. Compl. ¶¶ 168. Plaintiffs thus have been subject to the Exclusion since commencing employment (between July 2016 and September 2019). *Id.* ¶¶ 2-4; *see also id.* ¶ 28. Even if the discovery rule applies, *but see Adkins v. Pilot Flying J*, 2023 WL 4306735, at *3 (E.D. Tenn. June 30, 2023) (Sixth Circuit has not applied the discovery rule to Title VII), Plaintiffs could have "reasonably … discovered" the Exclusion as a term of their initial employment. *Vaughn v. Louisville Water Co.*, 302 F. Appx. 337, 344 (6th Cir. 2008); *see* Am. Compl. ¶¶ 75, 135 (Plaintiffs had access to plan Representatives). Yet no Plaintiff filed administrative charges within 300 days.

Further, Plaintiffs Zinner and Hamel failed to act within 300 days of *actual* knowledge of the Exclusion. Zinner learned that the Plan would not cover sex-transformation surgery no later than June 2020, but did not file an EEOC charge for two years. *Id.* ¶¶40, 76. Hamel learned about the Exclusion no later than July 22, 2019, but did not file an EEOC charge until February 3, 2021. *Id.* ¶¶ 46, 135. Neither filing fell within the administrative charge period, which began no later than when Plaintiffs first became aware of the Exclusion. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Later coverage denials did not reset the clock—they merely effectuated the challenged Exclusion. *See Del. State Coll. V. Ricks*, 449 U.S. 250, 258 (1980) (limitations period "commenced [ ] at the time" the "decision was made and communicated," "even though one of the effects of the" decision "did not occur until later"); *see also Banerjee*, 820 F. App'x at 330-32. Such denials are not "independently discrim-inatory" acts because they merely resulted in "the effects" of the Exclusion. *See Ricks*, 449 U.S. at 258; *Hebron v. Shelby Cnty. Govt.*, 406 Fed. Appx. 28, 30 (6th Cir. 2010) (citations omitted)). Nor does the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A), save the untimely claims. That statute extends only to "discrimination in compensation"—*i.e.*, "unequal pay for equal work." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1175 (10th Cir. 2011); *see Squires v. City of Detroit*, 2011 WL 2143116 n.4

11

(E.D. Mich. 2011) (Act "applies only to wage and salary compensation"). Even if the Act reached beyond wages and salary, Plaintiffs do not allege a pay disparity but rather acknowledge that their medical plans are "governed by the same terms" as all other employee plans. Am. Compl. ¶29 n.1.

**B.        Plaintiffs fail to establish a Title VII claim on the merits**

Title VII discrimination claims require a "plausible" pleading to survive a Rule 12 motion to dismiss. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 557). Plaintiffs must allege "sufficient factual content from which a court . . . could draw the reasonable inference" that Defendants "discriminated against [Plaintiffs] with respect to [their] compensation, terms, conditions, or privileges of employment *because of*" their sex. *Id.*, 684 F.3d at 610 (citing *Iqbal*, 556 U.S. at 678, 679) (cleaned up). Plaintiffs must also establish that "the defendant had a discriminatory intent or motive." *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Plaintiffs' allegations fail on both fronts.

***Plaintiffs were not treated differently than similarly situated employees.*** Plaintiffs must prove that a "comparable non-protected person was treated better" by establishing "at a minimum … (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated [] employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). Here, Plaintiffs contend that Defendants discriminated against them based on their transgender status by opting not to cover "surgery or other treatment for, or related to, sex transformations … other than psychological treatment or counseling." Am. Compl. ¶¶9, 11. However, as noted above, this Exclusion applies equally to all participants because the excluded service is simply not a covered benefit under the Plan Documents. Moreover, any transgender enrollee of either sex who applies for coverage of a medical treatment or procedure to change their sex will be denied, regardless of their biological sex. *Id.* ¶10 ("The Exclusion . . . bars coverage for transgender *people*") (emphasis added).

The Exclusion of coverage for sex-transformation medical procedures, therefore, complies with *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731 (2020). For each Plaintiff, "changing the employee's sex" would

not have "yielded a different choice." *Id.*, at 1741; *see also Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 598 (5th Cir. 2021) (affirming grant of motion to dismiss where plaintiff "failed to allege employer would have behaved differently toward an employee with a different gender identity"). Coverage for sex-transformation procedures is denied for all employees, male or female, transgender or not, pursuant to the Exclusion. Plaintiffs have not presented any facts demonstrating they were treated differently than other Plan members seeking treatment for gender dysphoria. That is fatal to Plaintiffs' Title VII claims.

It is also irrelevant under Title VII whether the excluded services are medically necessary. Employers have substantial flexibility under Title VII to decide which healthcare services to cover, and health insurance plans routinely exclude coverage of medically necessary procedures. *See, e.g., Saks v. Franklin Covey Co.*, 316 F.3d 337, 348-49 (2d Cir. 2003) (excluding medically necessary surgical impregnation); *Mullen v. Boyd Gaming Corp.*, 182 F.3d 914, 914 (5th Cir. 1999) (excluding medically necessary weight loss treatment); *Lenox v. Healthwise of Ky., Ltd.*, 149 F.3d 453, 454 (6th Cir. 1998) (excluding organ transplants); *Martin v. Masco Indus. Emps.' Benefit Plan*, 747 F. Supp. 1150, 1153-54 (W.D. Pa. 1990) (excluding medically necessary breast reduction). Regardless of medical necessity, Title VII does not require Plaintiffs' Plans to cover sex-transformation procedures because the Exclusion applies universally. *See Saks*, 316 F.3d at 349 ("Because the Plan's exclusion of coverage for surgical impregnation procedures limits the infertility procedures for male and female employees equally, that exclusion does not violate Title VII.").

***Plaintiffs have not pleaded facts demonstrating discriminatory intent.*** Title VII discrimination occurs only where an employer has treated a person less favorably "because of" a protected trait; therefore, Plaintiffs must establish Defendants acted with "discriminatory intent." *Ricci*, 557 U.S. at 577. "A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012); *accord Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009).

Plaintiffs fail to present any facts addressing discriminatory intent. The subject Exclusion has

13

been included in the relevant Plan Documents for years, Am. Compl. ¶168, and Zinner unsuccessfully requested that the Exclusion be removed. *Id.* ¶¶79, 81, 84. The Amended Complaint does not plausibly show that adoption and maintenance of the Exclusion were motivated by any intent to discriminate against a protected class. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081-82 (9th Cir. 2012) (merely being "aware" male employees would disproportionately benefit from a policy is not sufficient to show the requisite discriminatory intent). And UT had no role in determining Plan benefits.

Insurance programs like the State Plan and Local Education Plan do not provide "lesser terms of compensation," Am. Compl. ¶205, simply due to the "underinclusiveness of the set of risks that the State has elected to insure." *Geduldig*, 417 U.S. at 494. Plaintiffs' mere conclusory allegation of discriminatory intent, Am. Compl. ¶198, is insufficient and fatal to their Title VII claims.

### C.     State Defendants are not VanNess' employer for purposes of Title VII

VanNess is an employee of Knox County School District. Am. Compl. ¶3. VanNess is not—and never has been—an employee of any State Defendant. As the Complaint is void of facts evidencing a statutory employment relationship between VanNess and any State Defendant, VanNess's Title VII claims against the State of Tennessee, State Insurance Committee,[5] DFA, and the Local Education Insurance Committee ("LEIC") must be dismissed.

To recover under Title VII, a plaintiff must have an employment relationship with the defendant. 42 U.S.C.A. § 2000e-2. Employer status may be established directly or through the common law agency theory of liability. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 n.7 (6th Cir. 1997); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986).  Here, no State Defendant may be characterized as Plaintiff's direct employer, so the inquiry turns on whether the State Defendants are agents of Knox County.  To be deemed an agent of the school district, each State Defendant must be "subject to the [Knox County's] control" and have authority "with respect to [its] employment practices." *Swallows*, 128

---

[5] Not only is SIC not VanNess' employer, it does not determine benefits, premiums, or other terms for the Local Education Plan; that is the task of LEIC. Tenn. Code Ann. § 8-27-302. VanNess' claims against SIC fail for this additional reason.

14

F.3d at 996 (citing Restatement (Second) of Agency § 1 (1958); *see also York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982) (holding that an "agent" for the purposes of Title VII is limited to those to whom employment decisions have been delegated by an employer).

DFA and LEIC operate independently of any county agency. *See* Tenn. Code Ann. §§ 8-27-301, *et seq.*; Tenn. Code Ann. §§ 4-3-1001, *et seq.* Knox County's lack of control over State Defendants precludes any principal-agent relationship. *Peters v. Wayne State Univ.*, 691 F.2d 235, 238 (6th Cir. 1982), *vacated on other grounds*, 463 U.S. 1223 (1983) (holding a third-party insurer was not an "agent" of a state entity, in part, due to lack of control exerted by state entity). "[Knox County] cannot control [LEIC's or DFA's] administrative policies once its employees decide to join the plan." *Id.* Neither DFA nor LEIC control— much less "significant[ly] control"—the "hiring, firing, or conditions of [VanNess'] employment" as required for agency. *Pierce v. Cmmw. Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994).

Finally, while LEIC approves a group insurance plan for employees of local education agencies, agency participation is voluntary. Tenn. Code Ann. §§ 8-27-301, *et seq.* Knox County had the authority to provide its employees a different health insurance plan with benefits "equal *or superior to*" those offered by the Local Education Plan. Tenn. Code Ann. § 8-27-303(a)(2) (emphasis added). Knox County did not. It elected to participate in the LEIC's plan. Am. Compl. ¶37. Knox County, not a State Defendant, is "ultimately responsible for the compensation, terms, conditions, [and] privileges of employment provided to [VanNess]." *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1089 (1983) (concurrence of five justices) (internal quotations omitted).

### D. Plaintiffs failed to exhaust administrative remedies regarding hormone claims.

Plaintiffs bringing claims under Title VII must exhaust their administrative remedies. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). Accordingly, a Title VII plaintiff generally "cannot bring claims in a lawsuit that were not included in his EEOC charge." *Id.* Allowing a plaintiff to sue based on charges that were not identified in the EEOC charge "would

15

deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Id.* at 362. As a result, a plaintiff's EEOC charge must contain allegations sufficient to support a Title VII claim or to reasonably "prompt the EEOC to investigate a different, uncharged claim." *Id.*

In the Amended Complaint, Zinner and VanNess newly allege denials of cross-sex hormone treatment occurring after the EEOC had closed its investigation and issued a right-to-sue letter. Am. Compl. ¶¶ 42, 92-93 (Zinner); *id.* ¶¶ 45, 123-24 (VanNess). Neither Zinner nor VanNess alleged that they were denied hormone treatments in their EEOC Charge letter. *See* Ex. 3; Ex. 4. Nor is there any indication that the EEOC investigated the alleged denials. Accordingly, these new claims of discrimination arising from a denial of hormone treatment should be dismissed for lack of administrative exhaustion. *See Green v. Postmaster Gen. of U.S.*, 437 F. App'x 174, 178 (3d Cir. 2011) (holding alleged discrimination occurring after the right to sue letter is issued is not considered exhausted); *cf. Ulmer v. Dana Corp.*, 200 F. Supp. 2d 804, 815 (N.D. Ohio 2002), *aff'd*, 115 F. App'x 787 (6th Cir. 2004) ("The Plaintiffs have failed to offer any rationale, however, that might allow any other sort of Title VII claim to be introduced that is based on discrimination that occurred after the period stated in the EEOC complaint.").

## III. Zinner Fails to State a Plausible Title IX Claim.

Zinner's Title IX claim against UT is time barred and fails to establish Title IX liability.

### A. Zinner's Title IX claim is time-barred.

In Tennessee, the statute of limitations for Title IX claims is one year. *Bannister v. Knox Cnty. Bd. of Ed.*, 49 F.4th 1000, 1013 (6th Cir. 2022); *see also* Tenn. Code. Ann. § 28-3-104(a)(1). A Title IX claim accrues when a plaintiff "knows or has reason to know that they were injured and that the defendant caused their injury." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022). Dismissal is warranted where, as here, "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citation omitted).

16

Here, Zinner was notified no later than June 2020 that the State Plan excluded coverage for "surgery or treatment for, or related to, sex transformations" except for psychological treatment or counseling. Am. Compl. ¶¶ 75-76. At that point, Zinner knew of the alleged injury (denial of coverage) and the cause of that injury (coverage exclusion in the State Plan). DFA and UT personnel confirmed to Zinner in October 2020 and August 2021 that the Exclusion remained in the State Plan and that the State Insurance Committee had no plans to remove it. *Id.* ¶¶79-83. Zinner received confirmation by November 2021 that the 2022 State Plan still excluded coverage for surgical sex transformation. *Id.* 890 (¶85). Zinner filed suit on May 24, 2023, long past the expiration of the one-year limitations period.

**B.      Zinner fails to establish a Title IX claim on the merits.**

Title IX prohibits "discrimination under any education program or activity receiving Federal financial assistance," such as UT, "on the basis of sex." 20 U.S.C. § 1681(a). Zinner's Title IX claim fails because the State Plan applies uniformly to *all* Plan participants.

The Complaint does not identify any benefit available to men but not to women, or vice versa. It simply alleges that the sex-transformation procedures that Plaintiffs seek would be covered "but for the exclusion." Am. Compl. ¶172. That does not make the Exclusion discriminatory. The Program excludes numerous services, including treatments for infertility, sexual dysfunction, poor eyesight, hearing loss, and experimental cancer drugs. Ex. 1, at 13.04(A). Zinner's allegations do not show that the Exclusion discriminates based on sex any more than other exclusions in the State Plan.

To the extent Zinner attempts to assert that the Exclusion violates Title IX by "discriminating against … transgender employees," Am. Compl. ¶208, Zinner fares no better. There is no indication that the protection afforded to transgender status under Title VII extends to Title IX. The Sixth Circuit has recognized that "Title VII differs from Title IX in important respects" and that "it does not follow that principles announced in the Title VII context automatically apply in the Title IX context." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021); *see also Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648,

17

657 (5th Cir. 1997) ("[W]e should be reluctant to treat Title IX's anti-discrimination provisions in the same way that we treat Title VII's provisions."). The Supreme Court agrees. In *Bostock*, the Court expressly limited its holding to terminations based on transgender status. *Bostock*, 140 S.Ct. at 1753 ("The only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.'"). *Bostock* notes that questions regarding Title IX "are for future cases, not these." *Id.*

Title IX's language and history also provide good reason to distinguish its "on the basis of sex" language from Title VII's "because of sex" language. *See Neese v. Becerra*, 640 F.Supp.3d 668, 680 (N.D. Tex. 2022) ("As written and commonly construed, Title IX operates in binary terms —male and female—when it references 'on the basis of sex.'"); *Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 687 (N.D. Tex. 2016) ("[T]he text, structure, and purpose reveal that the definition of sex in Title IX's prohibition on sex discrimination unambiguously prevented discrimination on the basis of biological differences between males and females."). Many parts of Title IX and its regulations use binary language inconsistent with gender identity. For example, 20 U.S.C. § 1681(a)(2) discusses certain institutions which change "from being an institution which admits students of only one sex to being an institution which admits students of both sexes." Similarly, § 1681(a)(8) indicates that if certain "activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex." In contrast, gender identity encompasses a multitude of statuses and identities. *See* Am. Compl. ¶54 (identifying "gender identity" as "male, female, or some other category").

Acknowledging differences between the sexes does not equate to discrimination on the basis of sex. In fact, Title IX allows or even *requires* institutions to consider sex in accommodations. For example, universities may take sex into account in "maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686; *see also Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 813 (11th Cir. 2022) ("If sex were ambiguous, it is difficult to fathom why the drafters of Title IX went through the trouble of

18

providing an express carve-out for sex-separated living facilities, as part of the overall statutory scheme."). Under Title IX, universities *must* consider sex when allocating athletic scholarships. 34 C.F.R. § 106.37(c)(1). Similarly, a man may be denied participation on a women's athletic team, regardless of how he expresses himself, due to the biological differences between the sexes. *B.P.J. v. W. Va. St. Bd. of Educ.*, 649 F.Supp.3d 220, 233 (S.D.W.V. Jan. 5, 2023) (law limiting participation in women's athletics to biological girls does not violate Title IX). Thus, unlike the Supreme Court's interpretation of "because of sex" under Title VII, discrimination under Title IX is not a "but for" test—it contemplates permissible scenarios where "changing the [plaintiff's] sex would have yielded a different choice by the [defendant]."

Extending Title IX to transgender status would also likely violate the Spending Clause under which Title IX was enacted. "The legitimacy of Congress' power to legislate under the spending power … rests on whether the State voluntarily and knowingly accepts the terms of the contract." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (quotations omitted). If "Congress intends to impose a condition on the grant of federal moneys," as it did under Title IX, "it must do so unambiguously." *Id.* Title IX's protections do not "unambiguously" include transgender status.

But even if Title IX's protections do extend to transgender status, it would make no difference here. As previously discussed, the Exclusion of coverage for sex transformation procedures is applied to participants equally, regardless of their sex or transgender status. A request for coverage of sex-transformation surgery under the State Plan would be denied regardless of whether the person requesting it is male or female, transgender or not. Zinner's Title IX claim is without merit.

**IV.     Zinner lacks standing to assert any claims against UT.**

Even if the Exclusion did run afoul of Title VII or Title IX, Zinner lacks standing to assert any such claim against UT. The U.S. Constitution restricts the jurisdiction of federal courts to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. To establish a case or controversy, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

19

the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The causation element of standing demands that the injury be fairly traceable to the challenged action of a defendant, rather than the result of independent action by some third party. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). When an injury is caused by an unconstitutional rule of law, the proper defendant is the state official who enforces that rule. *Diamond v. Charles*, 476 U.S. 54, 64 (1986).

Although UT directs Zinner's day-to-day employment, it has no control over the State Plan. The State Plan is the only group health plan that UT may offer to employees. Am. Compl. ¶35. UT does not determine the premiums, benefits package, funding method, administrative procedures, eligibility provisions, or rules for the State Plan, those responsibilities are statutorily assigned to the State Insurance Committee. *Id.* ¶¶29-30, 119; Ex. 1, at 1.06. Nor does UT administer benefits provided under the State Plan or determine which benefits are covered or excluded. *Id.* Zinner cannot trace causation for any alleged injury to UT. And no injunctive relief issued against UT would redress the same. Accordingly, Zinner lacks standing to assert any claims against UT.

**V.      Zinner lacks standing for prospective relief.**

Zinner is no longer employed full time by UT or enrolled in the Program. Am. Compl. ¶¶ 25, 96. Accordingly, Zinner is not subject to the Exclusion and lacks standing to seek prospective relief. *See, e.g.*, *Grandell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . .if unaccompanied by any continuing, present adverse effects."). Any prospective relief sought by Zinner should be dismissed.

**CONCLUSION**

For all the foregoing reasons, the State Defendants respectfully request the Court to dismiss each of Plaintiffs' claims against them as a matter of law.

20

Dated: December 6, 2023

Respectfully submitted,

/s/ *Steven J. Griffin*
Steven J. Griffin (Bar No. 40708)
  Senior Counsel for Strategic Litigation
Ryan N. Henry (Bar No. 40028)
Reed N. Smith (Bar No. 40059)
Brooke A. Huppenthal (Bar No. 40276)
  Assistant Attorneys General
OFFICE OF THE TENNESSEE ATTORNEY
GENERAL & REPORTER
P.O. Box 20207
Nashville, TN 37202-0207
Phone: 615-741-9598
steven.griffin@ag.tn.gov
ryan.henry@ag.tn.gov
reed.smith@ag.tn.gov
brooke.huppenthal@ag.tn.gov

*Counsel for State Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 6, 2023, the undersigned filed the foregoing document using the Court's Electronic Court-Filing system, which sent notice of filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Ezra Cukor<br>Z. Gabriel Arkles<br>Shayna Medley<br>Transgender Legal Defense and Education Fund, Inc.<br>520 8th Ave, Ste. 2204<br>New York, NY 10018<br>Telephone: (646) 862-9396<br>Facsimile: (646) 993-1686<br>ecukor@transgenderlegal.org<br>garkles@transgenderlegal.org<br>smedley@transgenderlegal.org<br><br>J. Scott Hickman (No. 17407)<br>Sherrard Roe Voigt & Harbison, PLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4200<br>Facsimile: (615) 742-4539<br>shickan@srvhlaw.com<br><br>Phillip F. Cramer (No. 20697)<br>Sperling and Slater, LLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4535<br>pcramer@sperling-law.com<br><br>Darren Teshima<br>Udit Sood<br>Covington & Burling, LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, California 94105-2533<br>Telephone: (415) 591-6000<br>Facsimile: (415) 591-6091<br>DTeshima@cov.com<br>USood@cov.com<br>Suzan F. Charlton | Counsel for Plaintiffs |

| | |
|---|---|
| Natalie Ritchie<br>Elaine H. Nguyen<br>Covington & Burling, LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Facsimile: (202) 778-5465<br>scharlton@cov.com<br>nritchie@cov.com<br>enguyen@cov.com<br><br>James A. Holloway<br>Covington & Burling, LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749<br>jholloway@cov.com | |
| David M. Sanders (Bar No. 016885)<br>Jessica Jernigan-Johnson (Bar No. 032192)<br>Knox County, Tennessee<br>400 W. Main St., Suite 612<br>City-County Building<br>Knoxville, Tennessee 37902<br>Telephone: 865-215-3236<br>Facsimile: 865-215-2936<br>David.Sanders@knoxcounty.org<br>Jessica.Johnson@knoxcounty.org | Counsel for Defendant Knox County Board of Education |
| Kimberly S. Veirs<br>S. Jae Lim<br>Ejaz H. Baluch, Jr.<br>Jennifer M. Swedish<br>United States Attorney's Office<br>719 Church Street, Suite 3300<br>Nashville, TN 37203<br>Telephone: (615) 736-5151<br>Kimberly.Veirs@usdoj.gov<br>Jae.Lim@usdoj.gov<br>Ejaz.Baluch@usdoj.gov<br>Jennifer.Swedish@usdoj.gov | Counsel for Interested Party United States of America |

Respectfully submitted,

*/s/ Steven J. Griffin*
STEVEN J. GRIFFIN