## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| GERDA ZINNER, STORY VANNESS and AEMILIA HAMEL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:23-cv-535 |
| STATE OF TENNESSEE, et al., | ) ) | Judge Aleta A. Trauger |
| Defendants. | ) ) | |

### STATEMENT OF INTEREST
### OF THE UNITED STATES OF AMERICA

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States . . . ." The United States has a strong interest in eradicating employment discrimination, which includes ensuring the correct interpretation and application of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e *et seq.*, with respect to claims alleging discrimination because of an individual's sex. Moreover, the Attorney General is charged with enforcing Title VII where the employer is a state or local "government, governmental agency, or political subdivision." § 2000e-5(f)(1). Accordingly, the United States has a strong interest in the matter pending before the Court.

The United States submits this Statement of Interest to address the application of Title VII's prohibition on sex discrimination to employer-based health insurance programs that

1

contain exclusions that limit gender-affirming care for transgender persons.[1] The United States expresses no view on any factual dispute before the Court, nor on any legal question presented other than the aforementioned issue.

## STATEMENT OF THE CASE

Plaintiff Gerda Zinner is an Academic Advisor at the University of Tennessee at Chattanooga, where she has worked since September 2019. Am. Compl. ¶ 2, ECF No. 89. Plaintiff Story VanNess is a special education teacher at Knox County Board of Education, where she has worked from September 2023 to the present and previously from July 2016 to July 2022. *Id.* ¶ 3. Plaintiff Aemilia Hamel is an environmental scientist in the State of Tennessee's Department of Environment and Conservation, where she has worked since October 2018. *Id.* ¶ 4. All three women are transgender. *Id.* ¶ 53. Tennessee's health insurance program for state and local education agency employees has a blanket exclusion for "surgery or treatment for, or related to, sex transformations," irrespective of whether that treatment qualifies as medically-necessary treatment for gender dysphoria. *Id.* ¶¶ 9, 12, 13 (alterations omitted). Gender dysphoria is the clinically significant distress that can result from the dissonance between a transgender employee's gender identity and sex assigned at birth. *Id.* ¶ 6.

Ms. Zinner received from her medical providers, including her doctor and two therapists, a determination that a vaginoplasty and hormone replacement therapy were medically-necessary

---

[1] Different courts have used terms such as "gender reassignment," "gender confirmation," or "gender-affirming" to refer to this health care. Because the Amended Complaint refers to the treatment and care sought by Plaintiffs as gender-affirming, the United States uses the term "gender-affirming care" here. *See* Am. Compl. ¶¶ 13, 57–64, ECF No. 89.

treatment for her gender dysphoria. *Id.* ¶¶ 69, 73. Similarly, Ms. VanNess received from her medical providers, including her doctor, therapist, and two surgeons, a determination that hormone replacement therapy, facial gender-affirming surgery, and breast augmentation were medically-necessary treatment for her gender dysphoria. *Id.* ¶¶ 101, 111. Likewise, Ms. Hamel's medical providers, including her primary care physician and two surgeons, recommended hormone replacement therapy and bilateral breast augmentation as medically-necessary treatment for her gender dysphoria. *Id.* ¶¶ 130, 136, 139. But as a result of Tennessee's exclusion, neither Ms. Zinner, Ms. VanNess, nor Ms. Hamel were able to receive insurance coverage for the gender-affirming treatments that their medical providers have and continue to recommend. *Id.* ¶¶ 85, 87–89, 91-93, 112-115, 118, 123-124, 137-141 (alleging that the exclusion was the sole basis for the insurance coverage denials). Breast augmentation, vaginoplasty, and estradiol are otherwise covered by Tennessee's health insurance program. *Id.* ¶ 175.

Ms. Zinner, Ms. VanNess, and Ms. Hamel sued the State of Tennessee, the State Insurance Committee and its members, the Local Education Insurance Committee and its members, the Department of Finance and Administration and its Commissioner, the University of Tennessee and its President, the Tennessee Department of Environment and Conservation, and the Knox County Board of Education. In Count II of their Amended Complaint, Ms. Zinner, Ms. VanNess, and Ms. Hamel assert a sex discrimination claim based on transgender status under Title VII. They allege, among other things, that Defendants subjected them to disparate treatment in their compensation because of sex. *Id.* ¶ 205. Defendants assert that the health insurance

3

program is not discriminatory because the exclusion applies to all program participants regardless of sex and that Plaintiffs fail to sufficiently allege discriminatory intent. Defs.' Mem. Supp. Mot. Dismiss 12, ECF No. 93.

## ARGUMENT

When employers exclude health insurance coverage for medical treatment only when it is needed to provide gender-affirming care to individuals whose gender identity does not conform with the sex they were assigned at birth, they facially discriminate based on transgender status, which inherently discriminates based on sex under Title VII. *First*, such exclusions discriminate based on sex by making coverage contingent on whether the care seeks to align an employee's sex characteristics with their gender identity when it is inconsistent with their sex assigned at birth. *Second*, denying health insurance coverage because a medical treatment seeks that alignment makes the employee's sex a "but-for" cause of the coverage denial. This Court should therefore join every other district court that has addressed challenges to analogous health insurance exclusions on the merits under Title VII and hold that Plaintiffs sufficiently state a claim under Title VII. *Kadel v. Folwell*, 620 F. Supp. 3d 339, 386–87 (M.D.N.C. 2022); *Lange v. Houston Cnty.*, 608 F. Supp. 3d 1340, 1356–60 (M.D. Ga. 2022), *appeal docketed*, No. 22-13626 (11th Cir. Oct. 21, 2022); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1029–31 (D. Alaska 2020); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 995–97 (W.D. Wis. 2018).

Title VII bars an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. 2000e-2(a)(1). In *Bostock v. Clayton County*, the Supreme Court

4

explained that discrimination includes "mak[ing] a difference in treatment or favor (of one compared with others)." 140 S. Ct. 1731, 1740 (2020) (internal quotation marks omitted) (quoting Webster's New International Dictionary 745 (2d ed. 1954)). The phrase "because of" means, at a minimum, that when the employee's sex is a "but-for" cause of difference in treatment, it is "because of" sex. *Id.* at 1739. Health insurance benefits are "compensation, terms, conditions, or privileges of employment" under Title VII. *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983) (quoting 42 U.S.C. § 2000e-2(a)(1)). And there is "no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage." *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 710 (1978).

Therefore, because the exclusion facially discriminates based on transgender status, Ms. Zinner, Ms. VanNess, and Ms. Hamel, sufficiently state a claim for sex discrimination under Title VII. Moreover, when there is a facially discriminatory employment policy, employees do not need to plead discriminatory intent—contrary to what Defendants contend. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("[A] facially discriminatory employment policy . . . is direct evidence of discriminatory intent." (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379–80 (6th Cir. 1993)).

## I.    Gender-Affirming Care Exclusions Discriminate Based on Sex by Making Insurance Coverage Contingent on Whether the Care Seeks to Align an Employee's Sex Characteristics with Their Gender Identity.

Where an employer denies health insurance coverage for medical treatment solely when the treatment is needed to align an employee's sex characteristics with their gender identity when it is inconsistent with their sex assigned at birth—even though the same treatment would be covered if provided for a different medically-necessary purpose—that constitutes facial discrimination against transgender individuals. In such a situation, the health insurance program conditions coverage on whether a procedure is provided to alter an individual's sex characteristics to match their gender identity and not their sex assigned at birth. In doing so, the program "unavoidably discriminates against persons with one sex identified at birth and another today." *Bostock*, 140 S. Ct. at 1746.

The challenged exclusion under Tennessee's health insurance program bars coverage for otherwise-eligible medical treatments only when—and precisely because—they are provided to treat a medical diagnosis that is unique to transgender employees. The program thus treats employees differently based on their transgender status, which inherently constitutes discrimination based on sex under Title VII. As the Supreme Court has recognized, "it is impossible to discriminate against a person for being . . . transgender without discriminating against the individual based on sex." *Bostock*, 140 S. Ct. at 1741. In a case consolidated with *Bostock*, the Sixth Circuit likewise concluded that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex." *EEOC* v. *R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 571 (6th Cir. 2018), *aff'd*, *Bostock*, 140 S. Ct. 1731

6

(2020). By discriminating against transgender employees, health insurance programs that exclude gender-affirming care "unavoidably discriminate[ ] against persons with one sex identified at birth" but who identify with a different sex "today." *Bostock*, 140 S. Ct. at 1746. As such, discrimination based on transgender status inherently constitutes discrimination based on sex.

Tennessee's program is not saved by the fact that it purports to deny health insurance benefits based on an employee's medical diagnosis rather than based on an employee's sex. Instead, the exclusion here amounts to facial discrimination by proxy against transgender employees, where the proxy is a medical diagnosis that does not apply to non-transgender employees. *Cf. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."); *see also Hecox* v. *Little*, Nos. 20-35813, 20-35815, 2023 WL 5283127, at *26 (9th Cir. Aug. 17, 2023) (Christen, J., concurring in part and dissenting in part) (citation omitted) (observing in a case alleging transgender discrimination that "[p]roxy discrimination is a form of facial discrimination"). Indeed, Defendants admit that they denied Plaintiffs' medical treatments at issue in this case because of "the *purpose* of the procedure—sex transformation." Defs.' Mem. Supp. Mot. Dismiss Am. Compl. 3, ECF No. 93 (emphasis in original). The "explicit terms" of such a health insurance program, therefore, are "not neutral," *Aerospace & Agr. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991), as they expressly restrict, on the basis of sex, the benefits afforded to transgender employees for medically-necessary care.

7

Defendants correctly point out that an employer has discretion to decide which health insurance benefits it offers to enrollees. But once an employer decides to provide certain benefits, it may not distribute them in a discriminatory way. *See Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) ("A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free . . . simply not to provide the benefit at all."). As a result, denying health insurance coverage for medical treatment solely when the treatment is gender-affirming, but covering the very same treatment for any other purpose, is not simply an "underinclusive[ ] set of risks that the State has elected to insure," which is what Defendants assert here. Defs.' Mem. Supp. Mot. Dismiss Am. Compl. 14, ECF No. 93 (citing *Geduldig v. Aiello*, 417 U.S. 484, 494 (1974)). Selectively denying health insurance benefits that are otherwise available to non-transgender employees discriminates against transgender employees based on sex "with respect to [their] compensation, terms, conditions, or privileges of employment." 42 U.S.C. 2000e-2(a)(1).

## II. When an Employer Denies Health Insurance Coverage Because a Medical Treatment Seeks to Align an Employee's Sex Characteristics with Their Gender Identity, the Employee's Sex is a "But-For" Cause of the Coverage Denial.

Moreover, Plaintiffs satisfy Title VII's causation standard because the exclusion constitutes discrimination "because of" sex. *Bostock* stated that "Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation." *Bostock*, 140 S. Ct. at 1739 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013)). As *Bostock* explained, this means that "if changing the employee's sex would have yielded a different"

8

outcome for that individual employee, then the employer discriminated on the basis of sex. *Id.* at 1741.

To apply that logic here, if a transgender female employee (who was assigned male at birth) seeks insurance coverage of a medically-necessary vaginoplasty as treatment for her gender dysphoria, then Tennessee's exclusion of coverage for gender-affirming care will forbid insurance coverage for it. But change the employee's birth-assigned sex to female, and, under the facts alleged in the complaint, the same health insurance program will cover her access to a vaginoplasty for any other medically-necessary reason, such as to repair an injury or to treat a disease. Thus, Defendants' assertion that the exclusion at issue "complies" with *Bostock* because changing the employee's birth-assigned sex would not yield a different outcome is misplaced. Defs.' Mem. Supp. Mot. Dismiss Am. Compl. 12-13, ECF No. 93. Changing the employee's birth-assigned sex *does* change the outcome, despite the treatment (in this example, a vaginoplasty) remaining identical. Such health insurance programs therefore discriminate "because of" sex.

Other courts have held similarly. For instance, the State of North Carolina's health insurance program excluded coverage for treatments related to "sex changes or modifications." *Kadel*, 620 F. Supp. 3d at 354. *Kadel* highlighted that if the plaintiff were a non-transgender woman who sought hormone treatments, breast augmentation, vaginal repair, and vaginal construction surgery, the health insurance program would have covered those treatments. *Id.* at 387. But because her sex assigned at birth was male, coverage was not provided. *Id.* The court thus concluded "a straightforward application of the but-for test" determined that the plaintiff's

9

"birth-assigned sex was a but-for cause of her injury." *Id.*; *see also Lange*, 608 F. Supp. 3d at 1357–59 (holding that the insurance program at issue covering mastectomies for cancer treatment and hormone replacement therapy for menopause, but not for gender-affirming care, amounts to a violation of Title VII under *Bostock*); *Fletcher*, 443 F. Supp. 3d at 1030 (holding that because the insurance program at issue covered vaginoplasty for congenital defects, but not for gender-affirming care, it constituted a discriminatory policy); *Boyden*, 341 F. Supp. 3d at 995 (describing an exclusion that "denies coverage for medically-necessary surgical procedures based on a patient's natal sex" as a "straightforward case of sex discrimination" (citing *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 948 (W.D. Wis. 2018))). Under the reasoning of these cases, excluding coverage for a medical treatment only when it is provided to treat gender dysphoria represents a "straightforward case of discrimination." *Boyden*, 341 F. Supp. 3d at 995 (citation omitted).

Defendants' argument that the exclusion applies to everyone "regardless of their biological sex" thus fails. Defs.' Mem. Supp. Mot. Dismiss Am. Compl. 12, ECF No. 93. As *Kadel*, *Lange*, *Fletcher*, and *Boyden* all show, coverage for certain medical procedures under Defendants' health insurance program cannot be determined without knowing the employee's sex "identified at birth" and comparing it with their gender identity "today." *Bostock*, 140 S. Ct. at 1746. If their sex assigned at birth and gender identity align, the program provides coverage.

But if their sex assigned at birth and gender identity differ, the program excludes coverage. Tennessee's health insurance program therefore discriminates "because of" sex.[2]

Considering *Lange* in more detail is instructive because the employer defended a health insurance coverage exclusion for gender-affirming surgery by making an identical argument to Defendants here: that the exclusion applies to everyone regardless of their sex. 608 F. Supp. 3d at 1358. *Lange* highlighted that under *Bostock*, it is not a "defense for an employer to say it discriminates against both men and women because of sex." *Id.* (quoting *Bostock*, 140 S. Ct. at 1741). That defense is unavailable because Title VII "works to protect individuals of both sexes from discrimination, and does so equally." *Id.* (quoting *Bostock*, 140 S. Ct. at 1741); *see also Bostock*, 140 S. Ct. at 1741 (holding that Title VII protects both sexes even if an employer "treat[s] men and women as groups more or less equally"). Discriminating against both groups, then, does not "avoid[ ] Title VII exposure." *Lange*, 608 F. Supp. 3d at 1358 (quoting *Bostock*, 140 S. Ct. at 1741). Thus, even if exclusion of gender-affirming care applies to both transgender men and transgender women, the exclusion still does not avoid Title VII liability—it simply

---

[2] Other courts have reached similar conclusions under Section 1557 of the Affordable Care Act ("ACA"), which bars sex discrimination in health programs and activities receiving federal financial assistance, 42 U.S.C. 18116(a), and under the Equal Protection Clause of the Fourteenth Amendment. *See Hammons v. Univ. of Md. Med. Sys. Corp.*, No. 20-cv-2088, 2023 WL 121741, at *10 (D. Md. Jan. 6, 2023) (ACA claim); *C.P. v. Blue Cross Blue Shield of Ill.*, No. 20-cv-6145, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022) (same); *Fain v. Crouch*, 618 F. Supp. 3d 313, 327 (S.D. W. Va. 2022) (equal protection claim), appeal pending, No. 22-1927 (4th Cir. filed Sept. 6, 2022); *Flack*, 328 F. Supp. 3d at 951–53 (ACA and equal protection claims).

11

"doubles it" instead. *Id.* Similarly, the exclusion violates Title VII even if both transgender and

non-transgender employees are denied coverage for gender-affirming care.[3]

## CONCLUSION

For the reasons set forth above, Ms. Zinner, Ms. VanNess, and Ms. Hamel sufficiently

allege that Tennessee's health insurance program facially discriminates based on sex. Thus, the

Court should hold that Plaintiffs sufficiently state a claim under Title VII.

---

[3] Defendants' reliance on *Olivarez v. T-Mobile* also misses the mark. In *Olivarez*, the court was persuaded that "ordinary business practice," not unlawful discrimination based on gender identity, led to a transgender employee's termination after the employee took six months of leave and then sought further leave for "the indefinite future." 997 F.3d 595, 98 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 713 (2021). No facts about Plaintiffs' use of leave—or any facts related to Plaintiffs' job performance—are alleged here. Put differently, unlike the employer in *Olivarez*, Defendants here do not rely on the Plaintiffs' job performance as the basis for their adverse employment actions.

Defendants do not rely on *L. W. by & through Williams v. Skrmetti,* 83 F.4th 460 (6th Cir. 2023), to challenge the merits of Plaintiffs' Title VII claims. Nor could they— *Skrmetti* only addressed claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, not Title VII. *Id.* at 469. *Skrmetti* did recognize, however, that Title VII protects transgender status. *Id.* at 484.

Respectfully submitted,

Date:   January 10, 2024

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD (MD Bar, no
number issued)
Chief
Employment Litigation Section
Civil Rights Division

MEREDITH L. BURRELL (MD Bar, no
number issued)
Principal Deputy Chief
Employment Litigation Section
Civil Rights Division

LORI B. KISCH (DC Bar No. 491282)
Special Litigation Counsel
Employment Litigation Section
Civil Rights Division

s/ Jennifer M. Swedish
JENNIFER M. SWEDISH (D.C. Bar No.
977746) * *Admitted pro hac vice*
Deputy Chief
EJAZ H. BALUCH, JR. (MD Bar No.
1612130032) * *Admitted pro hac vice*
Senior Trial Attorney
Civil Rights Division
Employment Litigation Section
U.S. Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC  20530
Telephone: (202) 353-5107
Email:  Jennifer.Swedish@usdoj.gov

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

s/ Kimberly S. Veirs
KIMBERLY S. VEIRS, B.P.R. #034811
S. JAE LIM, B.P.R. #034764
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, TN  37203
Telephone: (615) 736-5151
Email:  Kimberly.Veirs@usdoj.gov
Email:  Jae.Lim@usdoj.gov

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, the foregoing document was filed electronically and was served by electronic means via the Court's electronic filing system to:

| | |
|---|---|
| Andrea Green, Esq.<br>Ezra Ungrich Cukor, Esq.<br>Shayna Medley, Esq.<br>Z. Gabriel Arkels, Esq.<br>Transgender Legal Defense and Educational Fund, Inc.<br>520 8th Avenue, Suite 2204<br>New York, NY 10018<br>Email: AGreen@transgenderlegal.org<br>Email: ECukor@transgenderlegal.org<br>Email: Smedley@transgenderlegal.org<br>Email: GArkels@transgenderlegal.org | J. Scott Hickman, Esq.<br>Sherrard Roe Voigt & Harbison, PLC<br>150 Third Avenue South, Suite 1100<br>Nashville, TN 37201<br>Email: shickman@srvhlaw.com |
| Darren Teshima, Esq.<br>Udit Sood, Esq.<br>James Holloway<br>Covington & Burling, LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Email: Dteshima@cov.com<br>Email: Usood.@cov.com<br>Email: Jholloway@cov.com | Phillip F. Cramer, Esq.<br>Sperling & Slater, P.C.<br>150 3rd Avenue South, Suite 1100<br>Nashville, TN 37201<br>Email: pcramer@sperling-law.com |
| Elaine H. Nguyen, Esq.<br>Natalie Richie, Esq.<br>Suzan Charlton, Esq.<br>Covington & Burling LLP<br>850 Tenth Street, NW<br>Washington, DC 20001<br>Email: ENguyen@cov.com<br>Email: NRitchie@cov.com<br>Email: scharlton@cov.com | Brooke Ashley Huppenthal, Esq.<br>Reed Neal Smith, Esq.<br>Ryan Nicole Henry, Esq.<br>Steven James Griffin, Esq.<br>Office of the Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, TN 37202<br>Email: brooke.huppenthal@ag.tn.gov<br>Email: reed.smith@ag.tn.gov<br>Email: ryan.henry@ag.tn.gov<br>Email: steven.griffin@ag.tn.gov |

| | |
|---|---|
| David M. Sanders, Esq.<br>Jessica Jernigan-Johnson, Esq.<br>Knox County Law Department<br>400 W Main Street, Suite 612<br>Knoxville, TN 37902<br>Email: david.sanders@knoxcounty.org<br>Email: jessica.johnson@knoxcounty.org | |

s/ Kimberly S. Veirs
KIMBERLY S. VEIRS
Assistant United States Attorney

15