IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERDA ZINNER, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:23-cv-00535 |
| | ) |
| STATE OF TENNESSEE, ET AL. | ) Judge Aleta A. Trauger |
| | ) |
| Defendants. | ) |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
STATE DEFENDANTS' JOINT MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................................1

ARGUMENT........................................................................................................................................1

    I.     Supreme Court Upholds Tennessee Law Banning Sex-Transition Medical Interventions for Minors................................................................................................1

    II.    The Challenged Exclusion Satisfies *Bostock* Because it Draws Lines Based on Medical Use and Not Sex or Transgender Status ......................................................3

          A.   The Exclusion does not classify based on sex. ................................................3

          B.   The Exclusion does not classify based on transgender status. ......................6

          C.   The Exclusion satisfies *Bostock*'s but-for causation standard.. .......................8

CONCLUSION....................................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ................................................................................................. Passim

*Brandt ex rel. Brandt v. Griffin*,
   --- F.4th ---, 2025 WL 2317546 (8th Cir. Aug. 12, 2025) ................................................ 4, 7

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022) .......................................................................................................... 7

*Geduldig v. Aiello*,
   417 U.S. 484 (1974) ..................................................................................................... 2, 6, 8

*L.W. ex rel. Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) ................................................................................................ 6

*Lange v. Houston Cnty.*,
   101 F.4th 793 (11th Cir. 2024) ........................................................................................ 4, 8

*Nguyen v. INS*,
   533 U.S. 53 (2001) ........................................................................................................... 2, 5

*Poe v. Drummond*,
   --- F.4th ---, 2025 WL 2238038 (10th Cir. Aug. 6, 2025) ................................................... 7

*United States v. Skrmetti*,
   605 U.S. ---, 145 S. Ct. 1816 (2025) ........................................................................ Passim

*United States v. Virginia*,
   518 U.S. 515 (1996) ............................................................................................................ 6

**Statutes**

42 U.S.C. § 2000e(k) ................................................................................................................. 7
Tenn. Code Ann. § 68-33-103 .................................................................................................. 2
Tenn. Code Ann. § 68-33-103(a) .............................................................................................. 4
Tenn. Code Ann. § 68-33-103(a)(1) ......................................................................................... 1
Tenn. Code Ann. § 68-33-103(b) .............................................................................................. 4

**Regulations**

21 C.F.R. § 201.57(c)(2) ........................................................................................................... 3
21 C.F.R. § 314.50(a)(1) ........................................................................................................... 4

# INTRODUCTION

Plaintiffs' theory of sex discrimination is based on arguments rejected by the Supreme Court. To prevail on their remaining disparate treatment claims under Title VII, Plaintiffs must demonstrate that they were intentionally treated "worse than others who are similarly situated" under their State of Tennessee health plans because of their sex. *Bostock v. Clayton County*, 590 U.S. 644, 657-58 (2020). They cannot do so. In *United States v. Skrmetti*, 605 U.S. ---, 145 S. Ct. 1816 (2025), the Supreme Court held that a Tennessee law banning sex-transition medical treatments for minors draws lines based on age and medical use, not sex or transgender status. And the Court found that such laws satisfy *Bostock*'s but-for causation standard because "changing a minor's sex or transgender status does not alter [their] application." *Id.* at 1834. The Exclusion challenged here is no different: The health plans' exclusion of coverage for surgeries and hormones related to "sex transformation"—like the dozens of other exclusions in each plan—applies to all plan members, regardless of their sex or transgender status.

As was the case with SB1, the challenged Exclusion draws lines based on medical use—*not* sex or transgender status. And although the Court in *Skrmetti* declined to extend *Bostock* to the equal-protection context, it nonetheless found that even "[u]nder the logic of *Bostock* … sex is simply not a but-for cause of SB1's operation." *Id.* at 1835. If SB1 does not draw classifications based on sex or transgender status, then neither does the challenged Exclusion here. Plaintiffs' remaining Title VII claims should be dismissed.

# ARGUMENT

## I. Supreme Court Upholds Tennessee Law Banning Sex-Transition Medical Interventions for Minors.

In *Skrmetti*, the Supreme Court upheld a Tennessee law that prohibits healthcare providers from using pharmaceutical or surgical interventions on minors for the purpose of sex transition. *See* Tenn. Code Ann. § 68-33-103(a)(1) ("SB1") (banning the use of puberty blockers, hormones, and surgeries for the purpose of (1) "enabling a minor to identify with, or live as, a purported identity

1

inconsistent with the minor's sex," or (2) "[t]reating purported discomfort or distress from a discordance between the minor's sex and asserted identity."). The Court held that the only classifications created by SB1 are based on "age" and "medical use"—neither of which trigger heightened scrutiny under the Equal Protection Clause. *Skrmetti*, 145 S. Ct. at 1829.

The Court determined that SB1 does not classify based on sex. *Id.* at 1829-32. "Under SB1 *no* minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence," but "minors of *any* sex" may be administered those drugs "for other purposes." *Id.* at 1831 (emphasis original). The Court rejected the argument that SB1's "mere reference to sex" creates sex-based classifications. *Id.* at 1829 (citing *Nguyen v. INS*, 533 U.S. 53, 64 (2001)). The Court further rejected the argument that the application of SB1 "turns on sex," noting that the use of hormones to treat gender dysphoria is a "different medical treatment" than using hormones to treat *other* conditions. *Id.* at 1830. The Court likewise rejected the argument that SB1 "turns on inconsistency with a protected characteristic" or "sex stereotyping." *Id.* at 1831-32.

The Court further held that SB1 does not classify based on transgender status. *Id.* at 1832-34. It noted that SB1 divides minors into two groups: "those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Id.* at 1833 (citing Tenn. Code Ann. § 68-33-103). Even if the first group includes only individuals who identify as transgender, the second group "encompasses both transgender and nontransgender individuals." *Id.* Thus, there is a "lack of identity" between transgender status and the excluded medical diagnoses. *Id.* (citing *Geduldig v. Aiello*, 417 U.S. 484, 497 n.20 (1974)).

Finally, the Court held that even if it were to extend *Bostock*'s reasoning to equal-protection claims, SB1 would satisfy *Bostock*'s simple test because changing the minor's sex would not change the

2

outcome. *Id.* at 1834-35. "Under the logic of *Bostock*, then, sex is simply not a but-for cause of SB1's operation." *Id.* at 1835.

Because SB1 draws lines based only on age and medical use, and *not* sex or transgender status, the Court analyzed SB1 under rational basis review—a standard it found the law easily satisfies.

Although *Skrmetti* dealt with a constitutional claim under the Equal Protection Clause, its determination that SB1 does not create classifications based on sex or transgender status is particularly instructive here. As discussed below, the Court's reasoning in *Skrmetti* confirms that the challenged Exclusion does not discriminate "because of" sex in violation of Title VII.

## II. The Challenged Exclusion Satisfies *Bostock* Because it Draws Lines Based on Medical Use and Not Sex or Transgender Status.

### A. The Exclusion does not classify based on sex.

1. To support their sex-discrimination claim, Plaintiffs first attempt to compare (1) people who seek hormones and surgeries to treat gender dysphoria, a psychological condition, with (2) those who seek hormones and surgeries to treat physical diseases and injuries—referring to them as the "same procedures." *See, e.g.,* Am. Compl. [ECF 89], ¶¶ 175, 185; MTD Resp. [ECF 101], at 3 ("Whether the Exclusion applies depends on whether an employee was assigned male or female sex at birth; the latter may obtain coverage for vaginoplasty or breast augmentation, but the former may not.").

The Supreme Court rejected this exact "same procedures" fiction in *Skrmetti*. The plaintiffs there had argued that "SB1 prohibits certain treatments for minors of one sex while allowing those same treatments for minors of the opposite sex." *Skrmetti*, 145 S. Ct. at 1830. But the Court found that the plaintiffs—like Plaintiffs here—had "contort[ed] the meaning of the term 'medical treatment'" by ignoring "the underlying medical concern the treatment is intended to address." *Id.* The Court observed that the FDA, for example, "approves drugs and requires that they be labeled for particular indications—the diseases they treat, prevent, mitigate, diagnose, or cure." *Id.* (citing 21

3

C.F.R. §§ 201.57(c)(2), 314.50(a)(1)). The medical treatment at issue depends on "both a given drug and the specific indication for which it is being administered." *Skrmetti*, 145 S. Ct. at 1830.

That makes sense. The sex-transition "vaginoplasty" sought by Plaintiff Zinner—a biological male—"requires that a person's testicles be removed, the urethra be shortened, and the penile and scrotal skin be used to line the neovagina, the space between the rectum and the prostate and bladder." *Lange v. Houston Cnty.*, 101 F.4th 793, 806 (11th Cir. 2024) (Brasher, J., dissenting). That is nothing like a vaginoplasty performed on a natal woman. The "underlying medical concerns" of each procedure are different. *Skrmetti*, 145 S. Ct. at 1830. The same logic applies to other types of surgeries and medications used for the purpose of sex transformation. For instance, the *Skrmetti* Court observed taking puberty blockers to alleviate gender incongruence is a "different medical treatment" than taking the same drugs to treat precocious puberty. *Id.* at 1830; *see also Brandt ex rel. Brandt v. Griffin*, --- F.4th ---, 2025 WL 2317546, at *3 (8th Cir. Aug. 12, 2025) ("A minor male who receives testosterone in order to masculinize his appearance receives a different procedure than a minor female who receives testosterone as a gender transition procedure."). In fact, States routinely authorize or provide health insurance coverage for a drug for one type of treatment (*e.g.,* morphine to treat pain) but not others (morphine to assist a patient's suicide).

The Court in *Skrmetti* thus held that SB1 "does not prohibit conduct for one sex that it permits for the other." 145 S. Ct. at 1831. Under SB1, healthcare providers cannot give puberty blockers or hormones to a minor for gender dysphoria, gender identity disorder, or gender incongruence; but they *can* give those drugs to minors for *other* medical purposes. *Id.* at 1830-31 (citing Tenn. Code Ann. §§ 68-33-103(a)-(b)). Thus, the "application of [SB1] does not turn on sex." *Id.* at 1831.

The same goes for the challenged Exclusion. No Plan member may obtain coverage for surgeries or hormones for the purpose of sex transition, but members of either sex may obtain coverage for surgeries or hormones for other purposes. "When properly understood from the

4

perspective of the indications that [surgeries] and hormones treat," the application of the challenged Exclusion—like SB1—clearly turns on medical use, and *not* sex. *Skrmetti*, 145 S. Ct. at 1830.

2. Plaintiffs have also argued that the Exclusion is facially discriminatory because it explicitly "references sex." MTD Resp. [101], at 3, 6. But in *Skrmetti*, the Court held that the "mere reference to sex" in SB1 did not draw a sex-based line. 145 S. Ct. at 1829 (citing *Nguyen*, 533 U.S. at 64). The Court noted that such an approach "would be especially inappropriate in the medical context," given that "some treatments and procedures are uniquely bound up in sex." *Id.* As the FDA has recognized, "research has shown that biological differences between men and women (differences due to sex chromosome or sex hormones) may contribute to variations seen in the safety and efficacy of drugs, biologics, and medical devices." *Id.* at 1829-30 (citing FDA, Sex as a Biological Variable (Jan. 30, 2025)).

Because the use of hormones and surgeries for the purpose of "sex transformation" is "uniquely bound up in sex," Tennessee clearly had sensible and nondiscriminatory bases for addressing those medical interventions through "sex-based language" in its health plans. *See* 145 S. Ct. at 1829-30.

3. Plaintiffs have further argued that the Exclusion "bars coverage for treatments whose purpose is to change an employee's sex characteristics." MTD Resp. [101], at 4. But the Court in *Skrmetti* rejected the same type of argument raised by the plaintiffs there against SB1. *See* 145 S. Ct. at 1831 (dismissing the dissent's view that SB1 "plainly classifies on the basis of sex because it turns on inconsistency with a protected characteristic") (citations omitted). Instead, the Court noted that SB1 simply prohibits administering certain drugs for particular medical uses, unrelated to consistency with any protected characteristic. So too here with respect to the challenged Exclusion.

4. Plaintiffs have also argued that the Exclusion "discriminates based on sex stereotypes." MTD Resp. [ECF 101], at 4. But the Supreme Court rejected the exact same argument in *Skrmetti*.

5

145 S. Ct. at 1832 (dismissing plaintiffs' argument that "SB1 enforces a government preference that people conform to expectations about their sex"). The Court held that SB1's classifications "are neither covertly nor overtly based on sex." *Id.* Indeed, a regulation "recognizing and respecting biological differences does not amount to stereotyping." *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484 (6th Cir. 2023) (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). As with SB1, the Exclusion challenged here does not rely on stereotypes about sex but simply limits the types of treatments covered by the plans for gender dysphoria. *See* MTD Reply [ECF 106], at 3.

      **B.**      **The Exclusion does not classify based on transgender status.**

Plaintiffs have further argued that the challenged Exclusion discriminated against them based on their transgender status. MTD Resp. [ECF 101], at 3. They assert that "[o]nly transgender people experience gender dysphoria and seek transgender-related medical care." Am. Comp. [ECF 89], ¶183. "[B]ut for their transgender status," Plaintiffs say, "the Program would have covered their healthcare." MTD Resp. [101], at 3. But that argument is grounded in the "same procedures" fiction rejected by the Court in *Skrmetti*. And regardless, *Skrmetti* forecloses any notion that the Exclusion classifies plan based on transgender status.

The *Skrmetti* Court recognized that, like abortions, sex-transition procedures are "medical procedure[s] that only one sex can undergo." 145 S. Ct. at 1833. To be sure, only a male can undergo a castrating "vaginoplasty" for the purpose of sex transition; a female cannot. And only a female can take testosterone to transition; a male cannot. The same goes for other sex-transition procedures. Relying on *Geduldig*, the *Skrmetti* Court held that the regulation of these types of procedures does not create a sex-based classification. *Id.* In *Geduldig*, the Court held that a California insurance program's exclusion of coverage for certain pregnancy-related disabilities did not discriminate based on sex. 417 U.S. at 486. The Court reasoned that the program did not exclude anyone from benefit eligibility because of sex but rather "remove[d] one physical condition—pregnancy—from the list of

6

compensable disabilities." *Id.* at 496 n.20. The program thus divided recipients into two groups: "pregnant women and nonpregnant persons." *Id.* Because "women fell into both groups, the program did not discriminate against women as a class." *Id.* Although only women can become pregnant, the exclusion of pregnancy from the list of compensable disabilities did not constitute a sex-based classification.[1] *Id.*

The *Skrmetti* Court likewise concluded that "SB1 does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." 145 S. Ct. at 1833. SB1 thus divides minors into two groups: those who might seek certain medications or surgeries to treat gender dysphoria, and those who might seek medications or surgeries to treat *other* conditions. *Id.* Assuming that transgender individuals are the only ones who would seek sex-transition medical interventions, the first group would include only transgender individuals; but the second group "encompasses both transgender and nontransgender individuals." *Id.* "Thus, although only transgender individuals seek treatment for gender dysphoria, gender identity disorder, and gender incongruence—just as only biological women can become pregnant—there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.*; *accord Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2245-46 (2022) (reasoning that abortion regulations do not discriminate based on sex despite abortion being "a medical procedure that only one sex can undergo"); *Brandt*, 2025 WL 2317546, at *5 (holding that Arkansas' law prohibiting sex-transition procedures for minors "does not classify based on transgender status"); *Poe v. Drummond*, --- F.4th ---

---

[1] Congress later amended Title VII to encompass discrimination "on the basis of pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k), recognizing that more was needed to expand Title VII's prohibition on sex discrimination to cover those specific conditions. But Congress did not change any text in Title VII that could alter the causation standard for determining sex-based discrimination, nor did it add language to cover other medical interventions—like sex-transition procedures—in the list of procedures it added surrounding "pregnancy" and "childbirth."

7

, 2025 WL 2238038, at *4-6 (10th Cir. Aug. 6, 2025) (holding that Oklahoma's law prohibiting the use of drugs and surgeries for sex transition turned on "the condition to be treated" and not sex or transgender status).

As with SB1 in *Skrmetti*, the Exclusion challenged here does not prevent any individual from obtaining coverage based on sex or transgender status. Instead, the Exclusion divides plan participants into two groups: those who may seek surgeries and hormones to treat gender dysphoria, and those who may seek surgeries and hormones to treat *other* conditions. Because transgender individuals fall into both groups, there is a "lack of identity" between the challenged Exclusion and transgender status. *Skrmetti*, 145 S. Ct. at 1833. The "fiscal and actuarial benefits of the [Plan] thus accrue to" both those who identify as transgender and those who don't. *Geduldig*, 417 U.S. at 496 n.20.

The challenged Exclusion therefore does not draw lines based on a participant's transgender status; it simply draws a line between "sex-change operations and other operations." *Lange*, 2024 WL 2126748, at *9 (Brasher, J., dissenting). And it is just one of dozens of exclusions of coverage contained in the health plans in which Plaintiffs were enrolled that prohibit treatments for certain medical purposes—including erectile dysfunction, infertility, cancer, hearing loss, and vision loss. Plaintiffs were covered for the *same* treatments for the *same* diagnoses as every other Plan participant. There is "no risk from which [non-transgender persons] are protected and [transgender persons] are not." *Geduldig*, 417 U.S. at 496-97. "Likewise, there is no risk from which [transgender persons] are protected and [non-transgender persons] are not." *Id.* Title VII does not require Tennessee to cover every treatment for every diagnosis, including gender dysphoria. Nor does Tennessee do so.

C. **The Exclusion satisfies *Bostock*'s but-for causation standard.**

The *Skrmetti* Court held that even if it were to extend the reasoning of *Bostock* to equal-protection claims, "sex is not a but-for cause of SB1's operation." 145 S. Ct. at 1835. In *Bostock*, the Court held that an employer who fires an employee "merely for being gay or transgender" violates

8

Title VII's prohibition on discharging an individual "because of" their sex. *Bostock v. Clayton County*, 590 U.S. 644, 683 (2020). *Bostock* applied the traditional but-for causation standard, which directs courts to "change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.* at 656. An employer who "penalize[s] a member of one sex for a trait or action that it tolerates in members of the other" fails that test. *Skrmetti* 145 S. Ct. at 1834 (citing *Bostock*, 590 U.S. at 662).

Applying *Bostock*'s reasoning, the *Skrmetti* court determined that "changing a minor's sex or transgender status does not alter the application of SB1." *Id.* at 1834. For example, if a patient seeks testosterone for the purpose of sex transition, SB1 prohibits the healthcare provider from administering it—regardless of whether the minor is male or female. Changing the minor's sex changes nothing. At the same time, SB1 allows giving testosterone to a minor for *other* diagnoses—such as a congenital defect, precocious puberty, disease, or physical injury—regardless of the minor's sex. *Id.* Under *Bostock*'s logic, then, "sex is simply not a but-for cause of SB1's operation." *Id.* at 1835.

The challenged Exclusion easily passes *Bostock*'s simple test for the same reasons as SB1. As previously discussed, the Plans exclude coverage for surgeries and hormones related to sex transition for *all* employees, without regard to sex or transgender status. *See* MTD Mem. [ECF 93], at 12-13. But Plaintiffs could obtain coverage for surgeries and hormones for *other* diagnoses, again regardless of their sex or transgender status. For each Plaintiff, "changing [the employee's] sex or transgender status does not alter the application of" the Exclusion. *Skrmetti*, 145 S. Ct. at 1834. Nor does the Exclusion "penalize[] a member of one sex for a trait or action that it tolerates in members of the other." *Id.* (citing *Bostock*, 590 U.S. at 662). As with SB1 in *Skrmetti*, "sex is simply not a but-for cause of [the Exclusion's] operation." *Id.* That should end this case.

## CONCLUSION

Plaintiffs' remaining Title VII claims against the State Defendants should be dismissed.

9

Dated: September 2, 2025                                       Respectfully submitted,


                                                               /s/ *Steven J. Griffin*
                                                               Steven J. Griffin (Bar No. 40708)
                                                                 *Deputy Attorney General*
                                                               Reed N. Smith (Bar No. 40059)
                                                                 *Senior Assistant Attorney General*
                                                               Ryan N. Henry (Bar No. 40028)
                                                                 *Assistant Attorney General*
                                                               Office of the Tennessee Attorney General
                                                               P.O. Box 20207
                                                               Nashville, TN 37202-0207
                                                               Phone: 615-741-9598
                                                               steven.griffin@ag.tn.gov
                                                               ryan.henry@ag.tn.gov
                                                               reed.smith@ag.tn.gov

                                                               *Counsel for State Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, the undersigned filed foregoing document using the Court's electronic court-filing system, which sent notice of filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Ezra Cukor<br>Z. Gabriel Arkles<br>Shayna Medley<br>Transgender Legal Defense and Education Fund, Inc.<br>520 8th Ave, Ste. 2204<br>New York, NY 10018<br>Telephone: (646) 862-9396<br>Facsimile: (646) 993-1686<br>ecukor@transgenderlegal.org<br>garkles@transgenderlegal.org<br>smedley@transgenderlegal.org<br><br>J. Scott Hickman (No. 17407)<br>Sherrard Roe Voigt & Harbison, PLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4200<br>Facsimile: (615) 742-4539<br>shickan@srvhlaw.com<br><br>Phillip F. Cramer (No. 20697)<br>Sperling and Slater, LLC<br>150 3rd Ave. South, Suite 1100<br>Nashville, TN 37201<br>Telephone: (615) 742-4535<br>pcramer@sperling-law.com<br><br>Darren Teshima<br>Covington & Burling, LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, California 94105-2533<br>Telephone: (415) 591-6000<br>Facsimile: (415) 591-6091<br>DTeshima@cov.com<br>USood@cov.com<br>Suzan F. Charlton | Counsel for Plaintiffs |

| | |
|---|---|
| Natalie Ritchie<br>Elaine H. Nguyen<br>Covington & Burling, LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>Telephone: (202) 662-6000<br>Facsimile: (202) 778-5465<br>scharlton@cov.com<br>nritchie@cov.com<br>enguyen@cov.com<br><br>James A. Holloway<br>Covington & Burling, LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>Facsimile: (424) 332-4749<br>jholloway@cov.com | |
| David M. Sanders<br>Jessica Jernigan-Johnson<br>Knox County, Tennessee<br>400 W. Main St., Suite 612<br>City-County Building<br>Knoxville, Tennessee 37902<br>Telephone: 865-215-3236<br>Facsimile: 865-215-2936<br>David.Sanders@knoxcounty.org<br>Jessica.Johnson@knoxcounty.org | Counsel for Defendant Knox County Board of Education |

/s/ *Steven J. Griffin*
STEVEN J. GRIFFIN